Humberto **RODRIGUEZ, Jr.,** Appellant,

v.

**The STATE of Texas.**

**No. 1568–03.**

Court of Criminal Appeals of Texas.

Oct. 13, 2004.

Hector J. Villarreal, Edinburg, for Appellant.

Matthew Paul, State's Atty., Austin, for State.

## OPINION

JOHNSON, J., delivered the unanimous opinion of the Court.

Appellant was convicted of aggravated kidnapping and capital murder. The jury sentenced him to twenty-eight years' confinement for the aggravated kidnapping, and life imprisonment for the capital murder,[1] in which the aggravating factor was kidnapping. On appeal, the court of appeals reversed the capital murder conviction, holding that Texas did not have territorial jurisdiction over the offense. *Rodriguez v. State*, No. 13-00-771-CR, 2003 WL 21939052, 2003 Tex.App. LEXIS 6962 (Tex.App.-Corpus Christi, August 14, 2003). On the state's petition for discretionary review, we are asked to consider whether this holding is correct. Because the kidnapping was an element of the capital murder and the kidnapping occurred in Texas, we hold that the jurisdictional requirements of TEX. PEN.CODE § 1.04(1) are met, and we reverse the judgment of the court of appeals as to the capital murder.

Appellant participated in a conspiracy to kidnap Hector Salinas, a potential government witness in a pending federal drug trial.[2] Salinas was taken from his used-clothing store in McAllen, Texas, and transported to Mexico, where he was tortured and killed.

Section 1.04(a)(1) of the Texas Penal Code provides for territorial jurisdiction "if either the conduct or a result that is an element of the offense occurs inside this state." We read this language in a manner that avoids ambiguity and

---

1. The state did not seek the death penalty.

2. After Salinas' disappearance, all seven defendants were acquitted.

absurd results. Thus, we hold that the phrase "that is an element of the offense" applies to both "conduct" and "result."

Section 1.04(b) also defines the result element: "If the offense is criminal homicide, a 'result' is either the physical impact causing death or the death itself." It is undisputed that the result element of this murder did not occur in Texas. Thus, territorial jurisdiction in this case depends on whether one or more of the conduct elements occurred in Texas.

To answer this question, the court of appeals looked to the Texas capital-murder statute, which reads in applicable part:

(a) A person commits an offense if the person commits murder as defined under Section 19.02(b)(1) and:

\* \* \*

(2) the person intentionally commits the murder in the course of committing or attempting to commit kidnapping, burglary, robbery, aggravated sexual assault, arson, obstruction or retaliation, or terroristic threat under Section 22.07(a)(1), (3), (4), (5), or (6)[.]

TEX. PENAL CODE § 19.03.

TEX. PENAL CODE § 19.02(b)(1), in turn reads:

(b) A person commits an offense if he:
(1) intentionally or knowingly causes the death of an individual.

The court of appeals attached great significance to the fact that the capital-murder statute refers to the murder statute and incorporates it by reference, rather than setting out the elements of murder separately:

Because the penal code's capital murder provision explicitly directs us to its murder provision, we hold that the offense of murder or an element of murder (either the conduct or a result) must be committed within this state in order for Texas to have jurisdiction over the offense of capital murder.

*Rodriguez v. State*, No. 13–00–771–CR, 2003 WL 21939052, \*3, 2003 Tex.App. LEXIS 6962 at \*8. Because none of the elements of the murder occurred in Texas, the court of appeals held that this state was without jurisdiction over the capital murder.

The state argues that the reference to § 19.02(b)(1) merely shows an intent by the legislature to limit the application of capital murder to cases in which the defendant "intentionally or knowingly cause[s] the death of an individual," thus preventing murders committed with lesser levels of intent from being elevated to capital murder.[3]

The state's argument is supported by the inclusion in § 19.03(a)(2) of limitations on the use of terroristic threat for the required aggravating factor: placing a single person in fear of bodily injury is excluded, while threats which imperil numbers of people, emergency workers, or the functioning of government or public services may constitute the aggravating conduct. After reviewing the aggravating factors set out in § 19.03(a)(1–8), we are

---

**3.** The other articulated ways of committing murder, set out in §§ 19.02(b)(2) and (3), require that a person

(2) intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual; or

(3) commits or attempts to commit a felony, other than manslaughter, and in the course of and in furtherance of the commission or attempt, or in immediate flight from the commission or attempt, he commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual.

TEX. PENAL CODE § 19.02

persuaded that the legislature's inclusion of the elements of § 19.02(b)(1) in the capital-murder statute by reference only was not intended to require that the murder be committed in Texas, but was an expression of the legislature's desire to limit capital murder to intentional and knowing murders that are committed in circumstances that the legislature found particularly egregious.

In *Patrick v. State*, 906 S.W.2d 481(Tex.Crim.App.1995), this Court discussed the elements that the state is required to prove in a prosecution for capital murder:

> In proving capital murder, the State must prove that the accused intentionally or knowingly caused the death of an individual and also that the accused engaged in other criminal conduct (i.e., kidnapping, robbery, aggravated sexual assault, escape from a penal institution) or had knowledge of certain circumstances (i.e., that the victim was a peace officer). We have therefore recognized that capital murder is a result of conduct offense which also includes nature of circumstances and/or nature of conduct elements depending upon the underlying conduct which elevates the intentional murder to capital murder.

*Patrick*, 906 S.W.2d at 491, *citing Hughes v. State*, 897 S.W.2d 285 (Tex.Crim.App. 1994). Thus, under our case law, the aggravating "nature of circumstances and/or nature of conduct elements" are elements of the offense of capital murder. *See also, Reyes v. State*, 84 S.W.3d 633, 636 (Tex. Crim.App.2002).

In this case, the state alleged and proved murder in the course of kidnapping. The kidnapping was the required aggravating "nature of conduct" element that elevated the offense from murder to capital murder. The kidnapping occurred in Texas, thus Texas has territorial juris-diction over the offense under Section 1.04(a)(1) of the Penal Code.

We reverse the judgment of the court of appeals as to the capital-murder conviction, and remand the matter to that court for further action consistent with this opinion.