COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| PATRICIA BOGGS HORAN, | § | |
| | | No. 08-07-00222-CR |
| Appellant, | § | |
| | | Appeal from the |
| v. | § | |
| | | 346th District Court |
| THE STATE OF TEXAS, | § | |
| | | of El Paso County, Texas |
| Appellee. | § | |
| | | (TC# 20040D05142) |
| | § | |

**O P I N I O N**

The opinion issued by this Court on July 1, 2009 is withdrawn and the following is the opinion of the Court.

Patricia Boggs Horan was convicted of theft of property with a value of $1,500 or more, but less than $20,000. Horan was sentenced to a five-year suspended sentence. Appellant was placed on community supervision for five years and ordered to pay $223 in court costs and $16,770 in restitution. She now appeals her conviction. For the reasons below, we affirm the judgment of the trial court.

**I. FACTUAL BACKGROUND**

Horan was convicted of stealing an aggregated amount of $1,500 or more, but less than $20,000 from Angela Ebert, a British citizen living in Hamburg, Germany. Horan became acquainted with Ebert through Horan's husband, Robin Carlson. Horan and Ebert then began a telephone friendship in 1998. In July 2002, Horan invited Ebert and her daughter to Horan's home in El Paso, Texas. Ebert and her daughter came to El Paso on July 4, 2002.

Ebert brought $25,000 with her, which she planned to place in a United States bank. Horan suggested that Ebert open an account at the Fort Bliss Federal Credit Union (FBFCU) (now First Light Federal Credit Union (FLFCU)). On July 8, 2002, the Carlsons took Ebert to FBFCU where Ebert then opened an account with the $25,000. Ebert gave the bank Horan's home address as the mailing address for this new account. The bank suggested that Ebert divide the money into five sub-accounts, which included a checking account, a savings account, a money-market account, and two share certificates. Ebert divided the money as follows: $15,000 into the money-market account, $5,000 in each of the share certificate accounts, and $463 in the checking account. Approximately one week later, the bank sent Ebert her PIN for the newly created account. Ebert testified that she gave Horan the PIN in order to activate the account and later allowed her to use the account to purchase medicine for Ebert's husband. Ebert testified that the only medicine she received from Horan was aspirin and ibuprofen. Ebert also testified that she did not give Carlson or any of the Carlson children the PIN to the account.

Ebert and her daughter then returned to Germany on August 10, 2002. From July 25, 2002, through October 9, 2002, there were several money transfers made from Ebert's FBFCU account to Horan's and Carlson's FBFCU joint account. All of these transfers were done over the telephone, using the credit union's automated voice system. Detective Bruce Campbell from the El Paso Police Department determined the amount transferred from Ebert's account to the Horan-Carlson joint account totaled $16,770.

Sergeant Stefan Happ from the El Paso Police Department testified that the transfers made over the phone, between the two accounts, were considered to be made on Fort Bliss military base because that is where all of the servers for FBFCU were located. Happ went on to say that he contacted the White-Collar Unit at the District Attorney's office who informed him that if some

transactions took place at ATMs in Texas, then the State of Texas would have jurisdiction. After the transfers were made to the Horan-Carlson joint account, the money was retrieved at various ATMs located in El Paso County, at Sunland Park Race Track and Casino, and at Speaking Rock Casino.

Once indicted, Horan represented herself from June 30, 2005, until December 15, 2005, when Kenneth Krohn was appointed to represent her. On October 20, 2006, Mr. Krohn mentioned that he was worried about Horan's mental stability and that Horan suffered from dementia. Mr. Krohn asked for a continuance, and for a psychiatric evaluation. He stated that Horan was often hysterical, and that she claimed to suffer from a brain disease. The court denied the continuance and noted that the trial court had personally observed Appellant represent herself, that Horan spoke to court staff, filed letters, and requested transcripts. The court also noted that while Appellant had been difficult, she did not have a problem communicating. The court held a hearing on October 24, 2006, at which Horan went through direct and cross-examination regarding her competency. The case was scheduled for jury trial to begin on January 19, 2007 and on January 12, 2007, Krohn filed a Motion to Appoint Cynthia Rivera, M.D. to evaluate Horan for competency and to assist in her defense. On January 12, 2007, the court ordered Dr. Rivera to conduct a competency evaluation. Appellant's jury trial began on June 25, 2007.

## II. DISCUSSION

Appellant presents two issues for review. In Issue One, Appellant contends that the evidence is legally insufficient to establish that Appellant appropriated at least $1,500 in the territorial jurisdiction of Texas, and that the evidence is legally insufficient to establish that Appellant appropriated at least $1,500 without the effective consent of Angela Ebert. In Issue Two, Appellant contends that the trial court erred in failing to conduct a competency trial.

## A. Legal Sufficiency of the Evidence

To support a criminal conviction, when the legal sufficiency of the evidence is under review, we consider all of the evidence in the light most favorable to the verdict. *Rollerson v. State*, 227 S.W.3d 718, 724 (Tex.Crim.App. 2007) (citing *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S. Ct. 2781, 2788-89 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex.Crim.App. 2007)). Based on the evidence, and reasonable inferences made from it, we evaluate whether a rational juror could have found beyond a reasonable doubt that all of the essential elements of the crime were met. *Rollerson*, 227 S.W.3d at 724.

In the State's reply to Issue One, it contends that jurisdiction is not an element of the offense and therefore cannot be subject to a legal-sufficiency review, as defined in *Jackson*. However, the *Jackson* standard is only a minimum legal sufficiency standard. *Watson v. State*, 204 S.W.3d 404, 412 (Tex.Crim.App. 2006). Regardless of the generally adopted *Jackson* standard, the Texas Court of Criminal Appeals has stated that the application of *Jackson* does not preclude any other type of review and does not prevent states from using higher standards of review. *Clewis v. State*, 922 S.W.2d 126, 132 (Tex.Crim.App. 1996). Reviewing territorial jurisdiction under a legal sufficiency standard does not in any way fall below the standard set out by *Jackson*. If anything, it would be imposing a higher standard of review.

Furthermore, this Court has already reviewed territorial jurisdiction under the *Jackson* legal sufficiency standard in *Torres*. *Torres v. State,* 141 S.W.3d 645, 652-54 (Tex.App.–El Paso 2004, pet. ref'd). The Texas Court of Criminal Appeals has also reviewed territorial jurisdiction under a *Jackson* standard in *Vaughn*. *Vaughn v. State,* 607 S.W.2d 914, 919-20 (Tex.Crim.App. 1980).

In reviewing the legal sufficiency of the evidence, the Court does not resolve any conflict of fact or assign credibility to the witnesses, as that is a determination for the jury to make. *Adelman*

*v. State*, 828 S.W.2d 418, 421 (Tex.Crim.App. 1992); *Matson v. State*, 819 S.W.2d 839, 843 (Tex.Crim.App. 1991). Our duty is only to determine if the findings of the trier of fact are rational by viewing all of the evidence admitted at trial in a light most favorable to the verdict. *Adelman*, 828 S.W.2d at 422. The trier of fact is authorized to resolve conflicts in the evidence, evaluate the credibility of witnesses, and determine the weight of particular evidence. *Torres,* 141 S.W.3d at 652 (citing *Jones v. State*, 944 S.W.2d 642, 647 (Tex.Crim.App. 1996)). It is also settled that "[j]urisdiction may be established by circumstantial evidence." *Torres,* 141 S.W.3d at 652 (citing *Vaughn*, 607 S.W.2d at 920).

The Court of Criminal Appeals has yet to decide what specific burden of proof is required to prove territorial jurisdiction. *Torres*, 141 S.W.3d at 652-54. The majority of courts have held that the correct burden is proof beyond a reasonable doubt, while the minority requires only a preponderance of the evidence. *Id*. Regardless, we find that the evidence is legally sufficient to establish territorial jurisdiction in Texas under either burden of proof.

Texas has territorial jurisdiction over an offense if "either the conduct or a result that is an element of the offense occurs inside this state." TEX. PENAL CODE ANN. § 1.04(a)(1)(Vernon 2003). The Court of Criminal Appeals held that the language "that is an element of the offense" applies to both "conduct" and "result." *Rodriguez v. State,* 146 S.W.3d 674, 675-76 (Tex.Crim.App. 2004).

In Texas, a person commits theft if he unlawfully appropriates property with the intent to deprive the owner of the property. TEX.PENAL CODE ANN. § 31.03(a)(Vernon Supp. 2008). Appropriation of property is unlawful if it is without the owner's effective consent. TEX.PENAL CODE ANN. § 31.03(b)(1). An owner is a person who has title to property, possession of the property, whether lawful or not, or a greater right to possession of the property than the actor. TEX.PENAL CODE ANN. § 1.07(a)(35)(A)(Vernon Supp. 2008). A person acts intentionally, or with

intent, with respect to the nature of her conduct, or a result of her conduct, when it is her conscious objective or desire to engage in the conduct or cause the result. TEX.PENAL CODE ANN. § 6.03(a) (Vernon 2003).

Horan was convicted of theft through one scheme and continuing course of conduct. Texas has jurisdiction over the offense if either the conduct or a result, that is an element of the offense, occurs in Texas. TEX.PENAL CODE ANN. § 1.04(a). When viewing the evidence in the "light most favorable to the verdict," there are several points that could convince a rational juror beyond a reasonable doubt that Texas had territorial jurisdiction over the crime. The evidence presented at trial includes the following: (1) Horan lived in El Paso County, Texas during the period of the alleged offense; (2) Horan spoke frequently with Ebert from her home phone; (3) Horan convinced Ebert to come and stay with her in El Paso; (4) Horan suggested that Ebert open an account at FBFCU where Horan had an account; (5) Ebert's PIN and bank statements were mailed to Horan's address in El Paso; and (6) ATMs used by Horan to access the cash were located in El Paso County. With intent being one of the elements of the crime, there is sufficient evidence to establish that the element of intent could have been formed in El Paso County, Texas. Moreover, several cash withdrawals of the transferred money occurred at ATMs in El Paso, Texas. The evidence is legally sufficient to convince a rational juror that either the element of appropriation, or the element of intent to deprive occurred in El Paso, Texas.

Appellant further contends that the evidence is legally insufficient to prove that the property was appropriated without the effective consent of Angela Ebert. Effective consent includes consent by a person legally authorized to act for the owner. TEX.PENAL CODE ANN. § 31.01(3)(Vernon Supp. 2008). Consent is not effective if induced by deception or coercion. TEX.PENAL CODE ANN. § 31.01(3)(A).

Again, viewing the evidence in the light most favorable to the verdict, there is sufficient evidence to convince a rational juror that the property in question was appropriated without the effective consent of Angela Ebert. The relevant evidence presented at trial includes the following: (1) Ebert's testimony that she had given Horan permission to use the money only for the purchase of medicine for Ebert's sick husband; (2) Ebert's testimony that the only medication she received from Horan was aspirin and ibuprofen; (3) Ebert's testimony that she never gave Horan permission to transfer money from her account to Appellant's account; (4) State's Exhibits Two and Three showing that a large portion of the money was taken out at Speaking Rock Casino's ATM machine and Sunland Park Casino's machine; (5) Ebert's testimony that once confronted, Horan promised to pay the transferred money back; (6) Ebert's testimony that she had not learned that the money was transferred out until she spoke with a credit union representative in March 2003; and (7) Bank records showing that Ebert's account statements were sent to Horan's address until April 2003.

Because the evidence is legally sufficient to establish jurisdiction and appropriation without effective consent, Issue One is overruled.

### B. Failure to Conduct a Competency Trial

In Issue Two, Appellant contends that the trial court erred in failing to conduct a competency trial. Later, Appellant argues that the trial court erred by failing to conduct a competency inquiry as required by the Texas Code of Criminal Procedure Article 46.02. The relevant law that applies in this case is Chapter 46B of the Texas Code of Criminal Procedure. TEX.CODE CRIM.PROC.ANN. ch.46B (Vernon 2006). Article 46.02 that Appellant cites was repealed effective January 1, 2004. Act of May 14, 2003, 78th Leg., R.S. ch. 35, § 15, 2003 Tex. Gen. Laws 57, 72. Whether Appellant is contending that the trial court erred in failing to conduct a competency trial, or failed to conduct an informal inquiry as required under Article 46B.004(c), the issue is overruled. TEX.CODE CRIM.

PROC. ANN. art. 46B.004(c)(Vernon 2006). We hold that the trial court did not err in failing to conduct a competency trial and that an adequate informal inquiry was conducted.

The trial court's decision not to hold a competency hearing is reviewed under an abuse of discretion standard. *Moore v. State*, 999 S.W.2d 385, 393 (Tex.Crim.App. 1999). The test for abuse of discretion "'is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action; rather, it is a question of whether the trial court acted without reference to any guiding rules or principles, and the mere fact that a trial court may decide a matter within its discretionary authority differently than an appellate court does not demonstrate such an abuse.'" *Howell v. State,* 175 S.W.3d 786, 792 (Tex.Crim.App. 2005)(quoting *Randon v. State*, 107 S.W.3d 646, 648 (Tex.App.–Texarkana 2003, no pet.)).

A person is presumed competent to stand trial and will be deemed competent to stand trial unless proven to be incompetent by a preponderance of the evidence. TEX.CODE CRIM.PROC.ANN. art. 46B.003(b)(Vernon 2006). A defendant is incompetent to stand trial if he does not have sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding, or he lacks a rational as well as factual understanding of the proceedings against him. TEX.CODE CRIM.PROC.ANN. art. 46B.003(a). The issue of defendant's competence may be raised by either party or the trial court. If evidence suggesting that the defendant is incompetent to stand trial comes to the attention of the trial court, it shall conduct an informal inquiry into whether there is some evidence from any source that would support a finding that the defendant is incompetent to stand trial. TEX.CODE CRIM.PROC.ANN. art. 46B.004.

In *Montoya v. State*, the Court of Criminal Appeals clarified that to trigger a competency inquiry:

*Bona fide* doubt is still the proper standard for determining whether a trial court

should conduct an inquiry. If a trial judge has a *bona fide* doubt about the competency of the defendant, he or she shall conduct an informal inquiry to determine if there is evidence that would support a finding of incompetence. A *bona fide* doubt may exist if the defendant exhibits truly bizarre behavior or has a recent history of severe mental illness or at least moderate mental retardation.

*Montoya v. State*, No. PD-0239-08, ___S.W.3d ___, 2009 WL 1873354, at \*1, 4 (Tex.Crim.App. July 1, 2009) (not yet published). If after an informal inquiry the trial court determines that evidence exists to support a finding of incompetency, it shall order an examination by an expert to determine whether the defendant is competent to stand trial. TEX.CODE CRIM.PROC.ANN. art. 46B.005(a).

We first address Appellant's complaint that the trial court failed to conduct an informal inquiry. We find that complaint to be moot. The sole purpose for conducting an informal inquiry is for the court to determine whether there is evidence to support a finding of incompetence; if so, an examination by an expert is required.

Here, the trial court ordered an examination by Dr. Cynthia Rivera even though the court noted that she had observed Horan's ability not only to understand the proceedings against her, but also to represent herself during two pretrial conferences. The defendant had filed several motions on her own and brought an oral motion questioning the State's jurisdiction. Although initially the court felt there was a lack of evidence raising a doubt as to Horan's competence, once defense counsel expressed a concern about Horan's mental stability, a hearing was held at which direct and cross-examination of the defendant specifically focused on the defendant's competency to stand trial. We find that the court did conduct the informal inquiry. Further once the motion requesting a psychiatric evaluation was filed, the trial court ordered a mental health examination by an expert. The fact that the trial court ordered a psychiatric evaluation does not constitute evidence that the defendant is incompetent. *Criswell v. State,* 278 S.W.3d 455, 459 (Tex.App.–Houston [14th Dist.] 2009, no pet.).

We will now address Appellant's argument that the trial court erred in failing to conduct a competency trial. Dr. Cynthia Rivera's Psychiatric Evaluation dated January 14, 2007 found Horan "competent to stand trial." In Appellant's brief, Appellant asserts that the Psychiatric Evaluation is no where to be found. In response, the State supplemented the record with its copy of the report. By letter Appellant raised an objection to the supplementation and that was overruled by this Court. Appellant argues that the absence of the report in the file implies that the examination was not conducted. There is no requirement that the expert report be filed or admitted into evidence as Appellant asserts. TEX.CODE CRIM.PROC.ANN. art. 46B.026(a) only required "an expert examining the defendant shall provide the report on the defendant's competency or incompetency . . . to the court, the attorney representing the state, and the attorney representing the defendant not later than the 30th day after the date on which the expert was ordered to examine the defendant . . . ." The fact that the State had a copy of the report in its file is some indication that Dr. Rivera complied with the court's order requiring her to submit a copy of the report to the trial court, the prosecuting attorney, and defendant's attorney. Furthermore, TEX.R.APP.P. 34.5(c)(1) allows an appellate court, trial court, or any party by letter to direct the trial court clerk to prepare, certify, and file in the appellate court a supplement containing a relevant item that has been omitted from the clerk's record. The report was properly considered by this Court in its analysis of whether the trial court erred in not conducting a competency trial. The failure to file the report should not raise an inference that Appellant's competence was left unresolved by the trial court where there is no requirement that it be filed. TEX.CODE CRIM.PROC.ANN. art. 46B.026(a).

In *Montoya*, the Court of Criminal Appeals has made it clear that "[t]he changes to the statute specify that a trial judge's inquiry into a defendant's competence may be informal, rather than the formal hearing required in the former statute. This allows the trial judge to informally determine

whether the behavior of the defendant during a proceeding indicates a lack of rational understanding." *Montoya*, 2009 WL 1873354, at *4.

We find that it is reasonable that the court acted within its discretionary authority and that under the guiding principle of *Montoya*, did not find that the evidence, even excluding the report, raised a *bona fide* doubt regarding Horan's understanding of the nature of the proceedings and her ability to consult with counsel with a reasonable degree of rational understanding. The only evidence hinting at incompetence comes from Appellant's own testimony and her attorney's observations of her mental instability, hysteria, and medical accounts. The relevant inquiry is whether that mental instability interfered with her ability to understand the proceedings or consult with her lawyer. The evidence before the court was to the contrary.

It is essential to make a distinction between impairment and incompetence. It is when a person's mental condition is such that he lacks the capacity to understand the nature of and object to the proceedings against him, to consult with counsel, and to assist in preparing his defense that he may not be subject to trial. *McDaniel*, 98 S.W.3d at 709.

The trial court observed Appellant's ability to represent herself during two pretrial conferences, file several motions on her own, and make an oral motion questioning the State's jurisdiction on the matter. In *Grider v. State*, 69 S.W.3d 681, 684-85 (Tex.App.–Texarkana 2002, no pet.), although the evidence showed that the defendant was impaired to some extent by a psychiatric disorder requiring medication, there was no evidence that such impairment rendered him incompetent under the proper definition; therefore, the trial court was under no duty to conduct a separate incompetency trial or hearing. "We cannot ignore the trial court's first-hand factual assessment of appellant's mental competency. His factual findings, that appellant understood the nature of the proceedings and assisted his counsel in his defense, are entitled to great deference by

the reviewing court." *McDaniel v. State*, 98 S.W.3d 704, 713 (Tex.Crim.App. 2003). We find that the trial court did conduct an informal inquiry and despite the lack of evidence indicating incompetence, ordered a psychiatric evaluation to determine competence. Further we find that there being no evidence of incompetency before the court, it was not required to hold a competency trial, thus the court did not abuse its discretion. TEX.CODE CRIM.PROC.ANN. art. 46B.004.

Appellant's second issue is overruled.

### III. CONCLUSION

For the forgoing reasons, we affirm the judgment of the trial court.

GUADALUPE RIVERA, Justice

September 16, 2009

Before Chew, C.J., McClure, and Rivera, JJ.

(Do Not Publish)