**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
September 18, 2009

Charles R. Fulbruge III
Clerk

No. 08-70039

JOSHUA MAXWELL

Petitioner-Appellant

v.

RICK THALER, Director,
Texas Department of Criminal Justice,
Correctional Institutions Division

Respondent-Appellee

Appeal from the United States District Court
for the Western District of Texas, San Antonio Division
USDC No. 5:06-cv-00884

Before JOLLY, BENAVIDES, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Petitioner Joshua Maxwell ("Maxwell"), convicted of capital murder in Bexar County, Texas and sentenced to death, requests this Court to issue a Certificate of Appealability (COA) pursuant to 28 U.S.C. § 2253(c)(2). Maxwell challenges the jury instructions submitted at both the guilt-innocence and punishment phases of trial. He also contends that his counsel rendered

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

ineffective assistance by failing to object to the allegedly unconstitutional instructions. Finding that Maxwell has not made a substantial showing of the denial of a constitutional right, we DENY a COA.

## I. PROCEDURAL HISTORY

A Bexar County, Texas grand jury returned an indictment charging Maxwell with committing intentional murder while in the course of committing a robbery or kidnaping. Tex. Penal Code § 19.03(a)(2).[1] A jury convicted Maxwell as charged, and the trial court, pursuant to the jury's answers to the special issues set forth in Code of Criminal Procedure Article 37.071, Sections 2(b) and 2(e), imposed a death sentence. The Texas Court of Criminal Appeals affirmed Maxwell's conviction in an unpublished opinion. *Maxwell v. State,* No. AP-74309 (Tex. Crim. App. Nov. 17, 2004). Maxwell applied for state habeas relief, and the trial court recommended denying relief. The Court of Criminal Appeals adopted the findings and conclusions of the trial court and denied the application. *Ex parte Maxwell*, No. WR-65268-01, 2006 WL 2848044 (Tex. Crim. App. Oct. 4, 2006). Maxwell subsequently filed a federal petition for writ of habeas corpus, which the district court denied in a memorandum opinion and order. *Maxwell v. Quarterman*, No. SA-06-CA-884, 2008 WL 3200672 (W.D. Tex. July 30, 2008). The district court also denied a COA. Maxwell now requests a COA from this Court.

## II. STANDARD OF REVIEW

Maxwell filed his 28 U.S.C. § 2254 petition for a writ of habeas corpus after the effective date of the Antiterrorism and Effective Death Penalty Act (AEDPA). The petition, therefore, is subject to AEDPA. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). Pursuant to the federal habeas statute, as amended by AEDPA, we defer to a state court's adjudication of a petitioner's claims on the

---

[1] Because resolving the claims presented in this COA does not require knowledge of the facts underlying the offense of capital murder, we do not recite them here.

merits unless the state court's decision was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court's decision is deemed contrary to clearly established federal law if it reaches a legal conclusion in direct conflict with a prior decision of the Supreme Court or if it reaches a different conclusion than the Supreme Court based on materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 404–08 (2000). A state court's decision constitutes an unreasonable application of clearly established federal law if it is "objectively unreasonable." *Id.* at 409. Further, pursuant to section 2254(e)(1), state court findings of fact are presumed to be correct, and the petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Valdez v. Cockrell*, 274 F.3d 941, 947 (5th Cir. 2001).

Additionally, under AEDPA, a petitioner must obtain a COA before he can appeal the district court's denial of habeas relief. *See* 28 U.S.C. § 2253(c); *see also Miller-El v. Cockrell*, 537 U.S. 322, 335–36 (2003) ("[U]ntil a COA has been issued federal courts of appeals lack jurisdiction to rule on the merits of appeals from habeas petitioners."). As the Supreme Court has explained:

> The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits. We look to the District Court's application of AEDPA to petitioner's constitutional claims and ask whether that resolution was debatable among jurists of reason. This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims. In fact, the statute forbids it.

*Miller-El*, 537 U.S. at 336.

A COA will be granted only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327 (citation omitted). "The question is the debatability of the underlying constitutional claim, not the resolution of that debate." *Id*. at 342. "Indeed, a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail." *Id*. at 338. Moreover, "[b]ecause the present case involves the death penalty, any doubts as to whether a COA should issue must be resolved in [petitioner's] favor." *Hernandez v. Johnson*, 213 F.3d 243, 248 (5th Cir. 2000) (citation omitted).

III.   ANALYSIS

   A.   Jury Instructions

   1.   Guilt-Innocence Phase of Trial

Maxwell contends that his Sixth Amendment and Due Process rights were violated when the trial court failed to submit a charge that required the jury to unanimously agree upon which of the two alleged predicate felonies he committed rendered the murder a capital offense. More specifically, the instructions did not require the jury to come to a unanimous conclusion with respect to whether the victim was murdered during the course of a robbery or a kidnaping.

Maxwell's claim is controlled by the Supreme Court's plurality opinion in *Schad v. Arizona,* and this Court's subsequent precedent interpreting *Schad.* 501 U.S. 624 (1991) (plurality); *Reed v. Quarterman,* 504 F.3d 465, 479 (5th Cir. 2007). In *Schad*, the jury was charged with the alternative theories of premeditated murder or felony murder. 501 U.S. at 630. The petitioner

contended that the instructions' failure to require the jury to unanimously agree with respect to whether he murdered the victim with premeditation or in the course of a robbery violated his constitutional rights. *Id.* The Supreme Court explained that the relevant inquiry was not one of jury unanimity inasmuch as the jury *had* unanimously determined that the State had proved what it was required to prove pursuant to state law. *Id.* at 630–31. Instead, the "petitioner's real challenge [was] to Arizona's characterization of first degree murder as a single crime as to which a verdict need not be limited to any one statutory alternative." *Id.* Thus, the relevant inquiry was whether Arizona's definition of capital murder ran afoul of the Constitution. *Id.* at 631.

In making this determination, the Supreme Court first looked to whether the legislature intended to create separate offenses or different means of committing one offense. *Id.* at 636–37. The Court explained that if the state court had interpreted the statute and determined that the alternatives are means of committing a single offense, federal courts "are not at liberty to ignore that determination and conclude that the alternatives are, in fact, independent elements under state law." *Id.* at 636. Previously, the Arizona Supreme Court had determined that premeditation and felony murder were not separate elements but instead were means of "satisfying a single *mens rea* element." *Id.* at 637.

Secondly, the Supreme Court addressed whether Arizona's definition of the crime as one offense violated due process. The plurality opinion expressly refused to formulate a "single test for the level of definitional and verdict specificity permitted by the Constitution." *Id.* at 637. Instead, the plurality opined that "our sense of appropriate specificity is a distillate of the concept of due process with its demands for fundamental fairness, [citation omitted], and for the rationality that is an essential component of that fairness." *Id.* at 637. The plurality explained that it would "look both to history and wide practice as

guides to fundamental values, as well as to narrower analytical methods of testing" to determine whether the alternative mental states may permissibly "satisfy the *mens rea* element of a single offense." *Id.* at 637. After analyzing various state courts' precedent, the opinion found considerable historical evidence supporting Arizona's use of alternative mental states as means to satisfy the *mens rea* element of a single offense. The opinion further found that it could reasonably be concluded that the two mental states were moral equivalents. *Id.* at 644. Ultimately, the opinion concluded that the jury instructions did not violate due process. *Id.* at 645.

Subsequently, this Court, in *Reed v. Quarterman*, applied the analysis in *Schad* to a case that is essentially on point with the case at bar. 504 F.3d 465, 479 (5th Cir. 2007). In *Reed,* the petitioner sought a COA based on his claim that "allowing the jury to convict him under two alternative theories without requiring unanimity as to one" violated due process. 504 F.3d at 479–82. In that case, the jury had been instructed that it could convict Reed of capital murder if it found that he committed murder in the course of robbery or attempted robbery or in the course of attempted aggravated rape. *Id.* Reed argued that *Schad* did not apply because his jury charge actually described two separate offenses as opposed to two different means of committing the single offense of murder. *Id.* at 480. Applying *Schad*, this Court recognized that "numerous states have traditionally defined and continue to define first-degree or aggravated murder as including both a killing in the course of robbery and a killing in the course of rape or attempted rape." *Id*. at 482. Indeed, the Arizona statute at issue in *Schad* did so. *Id.* We further concluded that courts "could reasonably find a moral equivalence between murder in the course of robbery and murder in the course of attempted rape." *Id.* Thus, we denied a COA, holding that reasonable jurists would not debate that the state court "reasonably applied *Schad* when it rejected Reed's challenge to his jury instructions." *Id.* In

view of this Court's precedent applying the plurality's reasoning, Maxwell is precluded from demonstrating that whether *Schad* applies is debatable among jurists of reason.

Maxwell acknowledges the holding in *Schad* but asserts that Justice Scalia's concurrence, which was narrowly based on historical grounds, effectively limited *Schad* either to its facts or to cases in which the jury is charged with the alternative mental states of premeditation and felony murder. This assertion is precluded by our above-discussed holding in *Reed*. Maxwell also contends that this Court should not rely on *Reed* or any other circuit case because the Supreme Court's precedent controls federal habeas claims. Maxwell is correct that "[u]nder AEDPA, the state courts are bound, not by our jurisprudence or the jurisprudence of our sister circuits, but by 'clearly established Federal law, as determined by the Supreme Court of the United States.'" *Summers v. Dretke*, 431 F.3d 861, 875 (5th Cir. 2005) (quoting 28 U.S.C. § 2254(d)(1)). Nonetheless, one panel of this Court *is* bound by a previous panel's interpretation of Supreme Court precedent. *See United States v. Short*, 181 F.3d 620, 624 (5th Cir. 1999) (explaining that one panel may not overrule the decision of a previous panel absent an intervening Supreme Court opinion explicitly or implicitly overruling our prior panel precedent). Maxwell likewise faults the district court for citing Fifth Circuit precedent; however, the district court, like the instant panel, is bound by our Court's caselaw interpreting Supreme Court precedent.

Maxwell also asserts that the state court's ruling is not entitled to deference under AEDPA because it was not an adjudication on the merits. Maxwell does not, however, explain his basis for arguing that the state court's adjudication was not on the merits. In any event, an "'adjudication on the merits' occurs when the state court resolves the case on substantive grounds, rather than procedural grounds." *Valdez v. Cockrell*, 274 F.3d 941, 946–47 (5th Cir. 2001). During the instant state habeas proceedings, the state trial court,

after a hearing, recommended denying relief on the merits, citing *inter alia, Kitchens v. State*, 823 S.W.2d 256 (Tex. Crim. App. 1991). The Court of Criminal Appeals denied relief based on its review of the record and the findings of the trial court. *Ex parte Maxwell*, No. 65268, 2006 WL 2848044 (Oct. 4, 2006). The denial was on substantive grounds, which constitutes an adjudication on the merits. Thus, the state court's decision is entitled to deference under AEDPA.

As set forth above, the state court denied relief on this claim relying upon its holding in *Kitchens,* 823 S.W.2d 256. Maxwell contends that the Court of Criminal Appeals's holding in *Kitchens*—that the predicate offenses that elevate murder to capital murder under Tex. Penal Code Ann. § 19.03 are not elements of capital murder but instead are alternate methods or means to commit capital murder—is wrongly decided. We need not tarry long here. "If a State's courts have determined that certain statutory alternatives are mere means of committing a single offense, rather than independent elements of the crime, we simply are not at liberty to ignore that determination and conclude that the alternatives are, in fact, independent elements under state law." *Schad*, 501 U.S. at 636; *see also Weeks v. Scott*, 55 F.3d 1059, 1063 (5th Cir. 1995) (explaining that in a federal habeas proceeding, this Court will not review a state court's interpretation of the state's own statute).

Maxwell also argues that the Court of Criminal Appeals's decision in *Rodriguez v. State,* 146 S.W.3d 674 (Tex. Crim. App. 2004), overruled *Kitchens*. In *Rodriguez,* the question was whether Texas had territorial jurisdiction over the capital murder offense even though only the kidnapping but not the actual murder occurred in Texas. The Court of Criminal Appeals explained that "capital murder is a result of conduct offense which also includes nature of circumstances and/or nature of conduct elements depending upon the underlying conduct which elevates the intentional murder to capital murder." *Rodriguez*, 146 S.W.3d at 677. The Court further explained that the offense of "kidnapping

was the required aggravating 'nature of conduct' element that elevated the offense from murder to capital murder." *Id.* Accordingly, because the kidnapping occurred in Texas, Texas had territorial jurisdiction over the capital murder offense. *Id.* In an unpublished opinion, we have previously rejected the contention that *Rodriguez* overruled *Kitchens*, noting (1) that the Court of Criminal Appeals "did not state that it was in any way modifying or overruling *Kitchens*" and (2) that the Court of Criminal Appeals was merely recognizing that the state must prove a defendant engaged in other specified criminal conduct to elevate the killing to a capital murder offense. *See Manns v. Quarterman*, 236 F. App'x 908, 915 n.6 (5th Cir. June 4, 2007). Moreover, Maxwell has not cited a case addressing the issue at bar in which the Court of Criminal Appeals has applied *Rodriguez's* language to the instant jury instruction challenge. Indeed, subsequent to *Rodriguez*, the Court of Criminal Appeals continues to rely on *Kitchens* for the proposition that the predicate offenses under § 19.03 are alternate methods or means to commit capital murder. *See, e.g., Luna v. State*, 268 S.W.3d 594, 601 & n.16 (Tex. Crim. App. 2008) (citing *Kitchens*, 823 S.W.2d at 258). Thus, we reject Maxwell's contention that *Kitchens* has been overruled.

In addition to contending that Texas state precedent has been overruled, Maxwell argues that the Supreme Court's plurality in *Schad* has been overruled *sub silentio* by *Richardson v. United States,* 526 U.S. 808 (1999). In *Richardson*, the Supreme Court held that a district court must instruct a jury to reach a unanimous verdict as to each of the specified violations that comprise the alleged "continuing series of violations" for the purposes of the continuing criminal enterprise statute. 526 U.S. at 824. In *Richardson,* the Supreme Court cited *Schad* several times and relied upon the teachings of the plurality opinion in its analysis. *Richardson*, 526 U.S. at 817, 819, 820, 822 (citing *Schad*, 526 U.S. at 631–33, 645). Although the Supreme Court ultimately held that jury unanimity

was required with respect to the violations pursuant to the continuing criminal enterprise statute, *Richardson* is distinguishable from *Schad*. As previously set forth, in *Schad* the plurality found considerable historical evidence supporting Arizona's use of alternative mental states as means to satisfy the *mens rea* element of a single offense. In stark contrast, in *Richardson*, the government "virtually concede[d] the absence of any such tradition when it [admitted] that the statute departed significantly from common-law models and prior drug laws, creating a new crime keyed to the concept of a 'continuing criminal enterprise." 526 U.S. at 821 (citation and internal quotations marks omitted). Thus, in light of the very different history surrounding the two statutes at issue in *Schad* and *Richardson*, we are not persuaded that reasonable jurists would find it debatable that *Richardson* overruled *Schad*.

Nonetheless, Maxwell cites the following language from a Texas Court of Criminal Appeals opinion: "[T]he plurality opinion in *Schad* has been undercut by the reasoning and result in the Supreme Court's later decision in *Richardson*." *Ngo v. State,* 175 S.W.3d 738, 746 (Tex. Crim. App. 2005). We first note that we are not bound by a state court's holding with respect to the analysis of a federal due process claim. *Thompson v. Cockrell*, 263 F.3d 423, 429 (5th Cir. 2001). In any event, Maxwell is not entitled to relief because neither *Schad* nor our subsequent precedent interpreting it has been overruled implicitly or explicitly. Accordingly, we are bound by *Schad* and *Reed,* which compel our holding that reasonable jurists would not debate that the state court reasonably applied *Schad* and rejected this claim.

Finally, Maxwell contends that the following relatively recent precedent of the Supreme Court reflects a shift toward (1) limiting the states' legislative discretion and (2) allowing greater federal court oversight with respect to statutory definitions. *Ring v. Arizona*, 536 U.S. 584 (2002); *Apprendi v. New Jersey*, 530 U.S. 466 (2000); *Richardson*, 526 U.S. 808; *Jones v. United States*,

526 U.S. 227 (1999). Once again, because this Court in 2007—subsequent to the above-cited Supreme Court cases—applied *Schad* to an almost identical case, we are bound to deny a COA. *Reed*, 504 F.3d at 479–82; *accord Manns*, 236 F. App'x at 913–16 (denying relief on the claim at issue after previously discussing *Ring* in the context of a challenge to the jury instructions submitted at the punishment phase). We therefore are constrained to DENY a COA with respect to Maxwell's challenge to the jury instructions at the guilt-innocence phase of trial.

### 2. Punishment Phase of Trial

Maxwell also challenges the instructions submitted to the jury at the punishment phase of trial. The first special issue submitted to the jury provided as follows: "Is there a probability that the defendant, Joshua Maxwell, would commit criminal acts of violence that would constitute a continuing threat to society?" Maxwell contends that the state trial court's failure to define the terms "probability," "criminal acts of violence," and "continuing threat to society" rendered the instructions unconstitutionally vague, thereby depriving him of a fair trial. This Court has held that there is no "clearly established federal law under which the terms of the Texas sentencing instructions could be unconstitutionally vague," and therefore denied a COA with respect to an identical claim to the above-quoted terms. *Turner v. Quarterman*, 481 F.3d 292, 299–300 (5th Cir.), *cert. denied*, 551 U.S. 1193 (2007); *accord Leal v. Dretke*, 428 F.3d 543, 553 (2005); *Hughes v. Johnson*, 191 F.3d 607, 615 (5th Cir. 1999). Maxwell also argues that the special issues failed to channel the jury's discretion. Because "Texas performs the constitutionally required narrowing function *before* the punishment phase, [Maxwell's] attack on the words used *during* punishment is unavailing." *Paredes v. Quarterman*, 574 F.3d 281, 294 (5th Cir. 2009) (footnotes omitted). Our precedent precludes Maxwell from

11

making a substantial showing of the denial of a federal constitutional right. We deny a COA on this claim.

The second special issue submitted to the jury provided that: "Taking into consideration all the evidence, including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant, is there a sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment rather than a death sentence be imposed?" Maxwell argues that the second special issue is constitutionally defective because it did not require the State to prove the aggravating elements beyond a reasonable doubt. In *Rowell v. Dretke,* we rejected this precise claim. *Rowell v. Dretke*, 398 F.3d 370, 378 (5th Cir. 2005) (opining that "[n]o Supreme Court or Circuit precedent constitutionally requires that Texas's mitigation special issue be assigned a burden of proof"). We are bound by our precedent and therefore must conclude that Maxwell has not made a substantial showing with respect to the denial of his right to a jury finding of beyond a reasonable doubt. *Scheanette v. Quarterman*, 482 F.3d 815, 828-29 (5th Cir. 2007) (ruling that reasonable jurists would not debate the district court's rejection of petitioner's claim that the jury was required to find the mitigating issue beyond a reasonable doubt). We DENY a COA with respect to this claim.

### B.    Ineffective Assistance of Counsel

Maxwell further argues that counsel's failure to object to the instructions at both phases of trial based on the above arguments constitutes ineffective assistance of counsel. To establish ineffective assistance of counsel, Maxwell must show (1) defense counsel's performance was deficient and (2) this deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). While "[j]udicial scrutiny of counsel's performance must be highly deferential," Maxwell can demonstrate deficient performance if he shows "that counsel's representation fell below an objective standard of reasonableness." *Id.*

at 688–89. However, "[t]here is a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *United States v. Webster*, 392 F.3d 787, 793 (5th Cir. 2004) (quoting *Strickland*, 466 U.S. at 689). *Strickland*'s "prejudice" prong requires a reasonable probability that, but for the deficient performance of his trial counsel, the outcome of his capital murder trial would have been different. 466 U.S. at 694.

With respect to the first prong, Maxwell has not shown that counsel's performance was deficient. As discussed above, the jury instructions at both phases of trial were not constitutionally infirm and therefore any objection would have been without merit. The failure to make meritless objections does not constitute deficient performance. *See Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994). Thus, we need not reach the prejudice prong of *Strickland*. Maxwell has not shown that reasonable jurists would find debatable this claim of ineffective assistance.[2]

## C.    CONCLUSION

We DENY a COA with respect to Maxwell's challenges to the jury instructions and his claims of ineffective assistance of counsel.

---

[2] Maxwell also raises other grounds of error in his motion for a COA before this Court. However, as the Respondent argues, Maxwell did not properly raise these issues in the district court and thus, the district court did not address them. "Compliance with the COA requirement of 28 U.S.C. § 2253(c) is jurisdictional, and the lack of a ruling on a COA in the district court causes this court to be without jurisdiction to consider the appeal." *Sonnier v. Johnson*, 161 F.3d 941, 946 (5th Cir. 1998).