

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-25-00055-CR

ALBERT GONZALEZ, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 372nd District Court
Tarrant County, Texas
Trial Court No. 1682304

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Chief Justice Stevens

MEMORANDUM OPINION

A Tarrant County jury found Albert Gonzalez guilty of capital murder and assessed a sentence of life imprisonment without parole. *See* TEX. PENAL CODE ANN. § 19.03(a)(2) (Supp.). On appeal, Gonzalez argues that the trial court erred (1) by admitting extraneous-offense evidence during guilt/innocence and (2) by including nature-of-conduct instructions in the definition of the term "intentionally" in the abstract portion of the jury charge instead of tailoring the definition to focus only on the result of the conduct.[1]

We find that Gonzalez was unharmed by the trial court's decision to admit extraneous-offense evidence over his lack of notice objection because his admission, that he obtained the evidence during discovery, showed he was not surprised by it. We further find that the trial court did not err by denying Gonzalez's request to limit the definition of the term "intentionally" since the offense as alleged included both result-of-conduct and nature-of-conduct elements. As a result, we affirm the trial court's judgment.

I. **Gonzalez Knew About and Was Thus Unharmed by the Admission of an Extraneous Offense**

A. **Factual and Procedural Background**

Mahmmud Ghanim was shot and killed during a game room robbery. In support of its case-in-chief, the State proffered the testimony of Gonzalez's co-defendant, Suzann Aleman. Without objection, Aleman testified that Gonzalez sought her assistance to rob a game room. According to Aleman, Gonzalez said he had "a friend who kn[ew] a doorman at a game room

---

[1]Originally appealed to the Second Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (Supp.). We follow the precedent of the Second Court of Appeals in deciding the issues presented. *See* TEX. R. APP. P. 41.3.

2

and that they had been trying to . . . go and rob it." Aleman testified that Gonzalez drove them to pick up bullets for his gun and then on to the game room. Aleman got into the driver's seat of the vehicle and stayed behind while Gonzalez and another co-defendant entered the game room. As a result, she did not witness what happened during the robbery.

Less than a week after the robbery, Aleman agreed to speak with the police. Outside of the jury's presence, the parties discussed the admissibility of Aleman's prospective testimony that Gonzalez pointed a gun at Aleman while confronting her about her willingness to cooperate with the police. The State alleged that the evidence showed "a guilty conscience" and claimed, "[I]t goes to show his motive to shut her up, keep her from speaking." Gonzalez argued that such testimony constituted an extraneous offense, while the State argued that matter was "contemporaneous."[2] Gonzalez objected because, even though he had notice that Gonzalez had pulled a gun on Aleman since he "receive[d] the matter in discovery," "it was not listed in the extraneous[-]offense notice." The trial court overruled Gonzalez's objection.

### B.    Analysis

In his first point of error, Gonzalez argues that the trial court erred by admitting an extraneous offense for which he had no proper notice. Here, the State cited Rule 404(b) of the Texas Rules of Evidence in support of its theory of admissibility because evidence of an extraneous offense showing consciousness of guilt is probative of intent. *See Hance v. State*, 714 S.W.3d 775, 815 (Tex. App.—Fort Worth 2025, no pet.) (citing TEX. R. EVID. 404(b)(2)). As a

---

[2]"To constitute an extraneous offense, the evidence must show that a crime or bad act was committed and that the defendant was connected to it." *Allen v. State*, 202 S.W.3d 364, 367 (Tex. App.—Fort Worth 2006, pet. ref'd) (citing *Moreno v. State*, 858 S.W.2d 453, 463 (Tex. Crim. App. 1993)).

result, the State was required to provide a Rule 404(b) notice to advise Gonzalez that it intended to use the extraneous offense during the guilt/innocence phase of trial. *See* TEX. R. EVID. 404(b)(2). "Since the notice requirement of Rule 404(b) is a rule of evidence admissibility, then it is error to admit Rule 404(b) evidence when the State has not complied with the notice provision of Rule 404(b)." *Hernandez v. State*, 176 S.W.3d 821, 824 (Tex. Crim. App. 2005). It is undisputed that the State did not provide the Rule 404(b) notice.

Even so, the applicable nonconstitutional-harm analysis requires us to disregard the error unless it affected Gonzalez's substantial rights. *See* TEX. R. APP. P. 44.2(b). We begin by noting that "[t]he purpose of rule 404(b)'s notice requirement is to prevent surprise to the defendant and apprise him of the offenses the State plans to introduce at trial." *Allen*, 202 S.W.3d at 367 (citing *Hernandez*, 176 S.W.3d at 823). Thus, in the context of lack of notice, the harm analysis is unique. *Hernandez*, 176 S.W.3d at 825.

In *Hernandez*, the Texas Court of Criminal Appeals clarified that rather than conduct "the usual harm analysis applied to the improper admission of evidence," a reviewing court's harm for noncompliance with notice requirements of Rule 404(b) revolves around the question of whether a defendant was unable to prepare his defense in a particular case. *Id.* That is, we consider how the lack of notice harmed the defendant's ability to prepare a defense to the wrongfully admitted evidence and not whether the admitted evidence injured the jury's verdict. *Id.*; *see Lair v. State*, No. 02-12-00068-CR, 2013 WL 4033618, at *5 (Tex. App.—Fort Worth Aug. 8, 2013, pet. ref'd) (mem. op., not designated for publication). When a defendant is not surprised by the extraneous-offense evidence, "it cannot be said that [its] effect or influence was

4

'injurious'" even if its admission "may have had a substantial effect or influence on the jury's verdict." *Hernandez*, 176 S.W.3d at 825.

Gonzalez specifically informed the trial court that he had received the extraneous-offense evidence during discovery and did not claim that he was surprised by the information at trial. He did not seek a continuance or other delay. *See Webb v. State*, 36 S.W.3d 164, 183 (Tex. App.— Houston [14th Dist.] 2000, pet. ref'd) (en banc). Gonzalez knew that Aleman would testify several months before trial. His defensive strategy was to admit to the robbery and to the fact that Ghanim was murdered. According to the defensive opening statement, the issue in the case was whether the offense was capital murder or murder and whether, "in that moment," Gonzalez had "the intent to kill." Gonzalez cross-examined Aleman and elicited positive information from her that Gonzalez told her that no one was supposed to get hurt.[3] That was supportive of his defensive theory. Under these facts, we find that Gonzalez has not shown "how his defense strategy might have been different had the State explicitly notified him that it intended to offer" the extraneous-offense evidence. *See Hernandez*, 176 S.W.3d at 826.

Given that Gonzalez had actual knowledge of the extraneous offense and did not claim surprise at trial, we find that he was unharmed by the State's failure to include the extraneous offense in its Rule 404(b) notice. As a result, we overrule Gonzalez's first point of error.

---

[3]Gonzalez argues that the extraneous-offense evidence "tended to show Appellant's control of his weapon against his trial theory." Yet, evidence showing why the extraneous-offense evidence was admissible is not enough to show harm from the State's lack of notice. *See Hernandez*, 176 S.W.3d at 825.

## II.    There Was No Jury-Charge Error

### A.    Procedural Background

The State's indictment alleged that Gonzalez intentionally shot and killed Ghanim while "in the course of committing or attempting to commit" robbery.  (Emphasis omitted).  The abstract portion of the trial court's jury charge contained the following definition of the term "intentionally":  "A person acts intentionally, or with intent, with respect to the nature of his conduct, or to a result of his conduct, when it is his conscious objective or desire to engage in the conduct or cause the result."  TEX. PENAL CODE ANN. § 6.03(a).

During the charge conference, Gonzalez argued that "the definition of intentionally that is applicable to capital murder is that 'A [sic] person acts intentionally, or with intent, with respect to a result of his conduct when it is his conscious objective or desire to cause the result.'"  The State responded by arguing that the definition of intentional conduct should not be limited to the result of Gonzalez's conduct but should also include a nature-of-conduct instruction since it had alleged that the offense was committed while in the course of a robbery or attempted robbery.  The trial court agreed and declined Gonzalez's proposed jury instruction limiting the definition.

In his last point of error, Gonzalez argues that the trial court erred by including the full definition of the term "intentionally" in the abstract portion of the jury charge because the jury "should have only been instructed that [Gonzalez] acted intentionally when it was his conscious objective or desire to cause the result."

## B.    Standard of Review

"'[T]he jury is the exclusive judge of the facts,' but the trial court submits a charge to the jury 'distinctly setting forth the law applicable to the case.'" *Alcoser v. State*, 663 S.W.3d 160, 164 (Tex. Crim. App. 2022) (alteration in original) (quoting TEX. CODE CRIM. PROC. ANN. arts. 36.13, 36.14). "The charge is meant to inform the jury of the applicable law and how to apply it to the facts of the case." *Id.* at 164–65 (citing *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007)). "Abstract paragraphs 'serve as a glossary to help the jury understand the meaning of concepts and terms used in the application paragraphs of the charge,' and application paragraphs apply the 'pertinent penal law, abstract definitions, and general legal principles to the particular facts and the indictment allegations.'" *Id.* at 165 (quoting *Crenshaw v. State*, 378 S.W.3d 460, 466 (Tex. Crim. App. 2012)). In general,

> [r]eversible error in the giving of an abstract instruction . . . occurs only when the instruction is an incorrect or misleading statement of a law that "the jury must understand in order to implement the commands of the application paragraph," and the "failure to give an abstract instruction is reversible only when such an instruction is necessary to a correct or complete understanding of concepts or terms in the application part of the charge."

*Id.* (quoting *Plata v. State*, 926 S.W.2d 300, 302 (Tex. Crim. App. 1996), *overruled on other grounds by Malik v. State*, 953 S.W.2d 234 (Tex. Crim. App. 1997)).

"A jury-charge-claim analysis involves two steps:  First, we determine whether the charge is erroneous.  If it is, then we must decide whether the appellant was harmed by the erroneous charge." *Id.* (citing *Wooten v. State*, 400 S.W.3d 601, 606 (Tex. Crim. App. 2013)).

## C.     Analysis

"Capital murder under Texas Penal Code § 19.03(a)(2) is a 'result of conduct' offense." *Turner v. State*, 805 S.W.2d 423, 430 (Tex. Crim. App. 1991) (quoting *Kinnamon v. State*, 791 S.W.2d 84, 88 (Tex. Crim. App. 1990) (per curiam), *overruled by Cook v. State*, 884 S.W.2d 485 (Tex. Crim. App. 1994)).  It "is defined in terms of one's intent to produce a specified result." *Id.*  "Not only must the accused be found to have intended to engage in the act that caused the death, he also must have specifically intended that death result from that conduct . . . ." *Id.*

That said, the Texas Court of Criminal Appeals has "recognized that capital murder is a result of conduct offense which also includes nature of circumstances and/or nature of conduct elements depending upon the underlying conduct which elevates the intentional murder to capital murder." *Rodriguez v. State*, 146 S.W.3d 674, 677 (Tex. Crim. App. 2004) (quoting *Patrick v. State*, 906 S.W.2d 481, 491 (Tex. Crim. App. 1995)).  Here, the State alleged robbery as the aggravating felony.  *See* TEX. PENAL CODE ANN. § 19.02(b)(1) (Supp.), § 19.03(a)(2) (A person commits capital murder if he intentionally or knowingly causes the death of an individual and "commits the murder in the course of committing or attempting to commit" a robbery.).

Accordingly, "[i]n a capital murder case such as this one, the State must prove both that the defendant intentionally caused the death of an individual *and* that he 'committed this intentional murder while in the course of committing or attempting to commit' the aggravating felony." *Riley v. State*, 447 S.W.3d 918, 922 (Tex. App.—Texarkana 2014, pet. ref'd) (quoting *Patrick*, 906 S.W.2d at 492).  "Hence, the elements of the underlying felony are necessary elements in proving capital murder." *Id.*

8

A person commits robbery when "in the course of committing theft . . . and with intent to obtain or maintain control of the property, he . . . (1) intentionally, knowingly, or recklessly causes bodily injury to another; or (2) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death." TEX. PENAL CODE ANN. § 29.02(a). "Theft includes a nature-of-conduct element." *Torres v. State*, 691 S.W.3d 138, 149 (Tex. App.—Austin 2024, pet. ref'd) (citing TEX. PENAL CODE ANN. § 31.03(a)) ("defining theft as 'unlawfully appropriat[ing] property with intent to deprive the owner of property'" (alteration in original)); *Herrera v. State*, 527 S.W.3d 675, 678 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd) ("explaining that unlawful appropriation element of robbery 'is a nature-of-conduct element'"); *Hughes v. State*, 897 S.W.2d 285, 295–97 (Tex. Cim. App. 1994) ("explaining that elevating offense in capital murder may have nature-of-conduct or nature-of-circumstances element")). Accordingly, the offense of robbery "does not fit neatly into [a] category." *Ash v. State*, 930 S.W.2d 192, 195 (Tex. App.—Dallas 1996, no pet.). As explained by our sister court:

> To prove robbery, the State is required to prove that appellant "caused bodily injury"; this refers to a result of the conduct. The portion of the charge requiring that the jury find that appellant caused the bodily injury "in the course of committing theft" refers to the circumstances surrounding the assaultive conduct. And reference to "unlawful appropriation" refers to the nature of the conduct. All three conduct elements, therefore, are appropriate . . . .

*Id.* (footnote omitted); *see Barnes v. State*, 56 S.W.3d 221, 234 (Tex. App.—Fort Worth 2001), *abrogated on other grounds by Hurd v. State*, 322 S.W.3d 787, 793 n.5 (Tex. App.—Fort Worth 2010, no pet.) (per curiam); *Siebel v. State*, No. 02-12-00622-CR, 2014 WL 261053, at *7 (Tex. App.—Fort Worth Jan. 23, 2014, pet. ref'd) (mem. op., not designated for publication) (noting that aggravated robbery "contains result-of-conduct, nature of-conduct, and circumstances-

surrounding-conduct elements"); *Williams v. State*, No. 05-12-01465-CR, 2014 WL 3756305, at \*5 (Tex. App.—Dallas July 30, 2014, pet. ref'd) (mem. op., not designated for publication).

Under the facts here, we conclude that the trial court did not err by denying Gonzalez's request to limit the definition of "intentionally" to include only the result-of-conduct portion of the definition. *See Torres*, 691 S.W.3d at 149 (finding that "it was not error for the trial court to include the nature-of-conduct portions of the intentional definition" in a capital murder case); *Barnes*, 56 S.W.3d at 234; *Siebel*, 2014 WL 261053, at \*7; *Rodriguez*, 146 S.W.3d at 677. Having found no error in the trial court's charge, we overrule Gonzalez's last point of error.

## III. Conclusion

We affirm the trial court's judgment.

Scott E. Stevens
Chief Justice

Date Submitted:    October 21, 2025
Date Decided:    November 17, 2025

Do Not Publish