

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-09-226-CR

HERSCHEL JEROME HURD                                              APPELLANT

V.

THE STATE OF TEXAS                                                        STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY

------------

## OPINION

------------

### I. Introduction

Appellant Herschel Jerome Hurd appeals his conviction for aggravated assault on a public servant.[1] He contends in three issues that the evidence is factually insufficient to establish the aggravating element of the offense, that the trial court erred by including an affirmative deadly weapon finding in the judgment, and that the

---

[1] *See* Tex. Penal Code Ann. §§ 22.01(a)(2), 22.02(a)(2), (b)(2) (Vernon Supp. 2009).

judgment should be reformed to delete any reference to a firearm. We affirm the judgment as modified.

## II. Background

At approximately 8 a.m. on August 20, 2008, Tarrant County Sheriff's Officer Michael Thompson escorted five inmates, Appellant, Christopher Shaw, James Edwards, Erick Davila, and Julian Torres, to the basketball gym on the eighth floor of the Tarrant County Jail. Officer Thompson conducted a pat-down search of each of the inmates before escorting them to the gym.

After Officer Thompson secured the exterior gym door and left the inmates to play basketball, the inmates called Officer Thompson back because there was water on the gym floor. Officer Thompson then took the inmates to another gym on the eighth floor, and Shaw and Torres entered the second gym. As Officer Thompson was closing the door to the second gym, Appellant, Davila, and Edwards attacked him and pushed him into a nearby vestibule. All three pushed, kicked, and punched Officer Thompson; Officer Thompson tripped, fell into the gym, and was kicked in the head. Appellant stepped on the back of Officer Thompson's neck, told Officer Thompson not to move, and demanded that Officer Thompson tell him which key opened the door. Davila had a shank in his hand and began stabbing Officer Thompson. An inmate removed Officer Thompson's wallet and keys and attempted to remove his shirt. Officer Thompson testified that the inmates told him that they

2

would kill him if he did not give them an escape route; Officer Thompson gave them a route that was not an actual escape route.

Davila yelled that "somebody is coming" when an elevator arrived on the floor, and Appellant, Edwards, and Davila ran toward the elevator. Officer Teresa Otterson and Tarranty County maintenance workers Nathan Peters and Charles Tucker were on the elevator. One of the inmates punched Officer Otterson in the head, and Officer Otterson fell to the floor. Appellant then punched Peters. Appellant, Edwards, and Davila then fled.

Officer Raymond Manning and other officers responding to the emergency call apprehended Appellant and Edwards as they were trying to open the back exit doors in the gym; Appellant had Thompson's keys and was trying to open the door.[2] Officer Manning testified that Appellant appeared to be trying to escape and that it did not appear that Appellant was being forced to participate. Officer Manning also testified that he observed blood on Appellant's hands and that Appellant had an injury on his thumb near where he would have held a weapon.

Officer Thompson was taken to the hospital; he had a cut on his left cheek that required eleven stitches and a cut above his left eye that required three stitches. Officer Thompson also had pain in his neck, suffered from headaches, and did not return to work for nine weeks. He testified that he did not recall seeing a shank

---

[2] ... Davila was also apprehended, but it is unclear from the record where he was apprehended.

during the attack and does not know who stabbed him. He also testified, however, that he can definitively say that Appellant participated in the attack.

Officers recovered a shank, a homemade weapon, from the gym floor. They recovered a second shank from a sewer pipe connected to the toilets near the gym. The officers determined that the shanks had been made from heating elements provided to inmates to warm their food. Analysis of DNA collected from the first shank revealed a mixture of three DNA contributors, and Appellant could not be excluded as a contributor; a partial profile from DNA on the shank handle was consistent with Appellant's DNA. And analysis of DNA from Appellant's jumpsuit excluded all inmates other than Appellant and contained DNA from Thompson.

Shaw testified that prior to August 20, 2008, he became aware of an escape plan by Edwards and Appellant. Shaw overheard that the men were planning the escape attempt and saying that they needed another person. Shaw testified that he heard Appellant say that the third person would be Davila, Appellant's "homeboy." Shaw testified that the escape plan was Edwards's idea and that Edwards was trying to force others to participate; Shaw described Edwards as a violent person with a murder conviction.

Shaw testified that Davila had a nickname, "Young Truman," and that Davila was part of the Truman Street Bloods; Shaw is also a Blood. Shaw said that Appellant is a Crip and that Bloods and Crips do not normally associate with one another. However, Shaw testified that the "code" is different in jail, that self-

4

preservation is the first priority in jail, and that self-preservation can sometimes mean affiliating with rival gang members.

Shaw also witnessed the attack. He testified that Davila, Edwards, and Appellant all hit Thompson with their fists, that Davila had a shank in his hand, that Davila was stabbing Thompson while Edwards held him, and that Appellant put his foot on the back of Thompson's neck. Shaw referred to Appellant as the least aggressive of the three attackers but explained that he was referring to the relative violence involved in their underlying crimes, not their respective participation in the assault. Shaw said that Davila, Edwards, and Appellant were equal participants as he observed them before and during the attack. Shaw testified that, from overhearing the planning conversations and witnessing the attack, it appeared to him that Appellant was a participant in the assault and was not forced into participating.

On September 17, 2008, a grand jury indicted Appellant for aggravated assault on a public servant with a deadly weapon. Appellant pleaded not guilty and was tried in June 2009. The jury found Appellant guilty and assessed his punishment at sixty years' confinement. The trial court sentenced Appellant accordingly and included an affirmative deadly weapon finding in the judgment.

### III. Aggravating Element of the Offense

Appellant contends in his first issue that the evidence is factually insufficient to establish the aggravating element of his conviction for aggravated assault on a public servant. Specifically, Appellant argues that the evidence fails to show that he

5

used the deadly weapon, a shank, or that he knew that a shank would be used. The State responds that the evidence is factually sufficient under the law of parties to support Appellant's conviction.

## A. Standard of Review

When reviewing the factual sufficiency of the evidence to support a conviction, we view all the evidence in a neutral light, favoring neither party. *Steadman v. State*, 280 S.W.3d 242, 246 (Tex. Crim. App. 2009); *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006). We then ask whether the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the factfinder's determination is clearly wrong and manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the factfinder's determination is manifestly unjust. *Steadman*, 280 S.W.3d at 246; *Watson*, 204 S.W.3d at 414–15, 417. To reverse under the second ground, we must determine, with some objective basis in the record, that the great weight and preponderance of all the evidence, although legally sufficient, contradicts the verdict. *Watson*, 204 S.W.3d at 417.

Unless we conclude that it is necessary to correct manifest injustice, we must give due deference to the factfinder's determinations, "particularly those determinations concerning the weight and credibility of the evidence." *Johnson v. State*, 23 S.W.3d 1, 9 (Tex. Crim. App. 2000); *see Steadman*, 280 S.W.3d at 246.

Evidence is always factually sufficient when it preponderates in favor of the conviction. *Steadman*, 280 S.W.3d at 247; *see Watson*, 204 S.W.3d at 417.

## B. Applicable Law

### 1. Aggravated Assault on a Public Servant

A person commits the offense of aggravated assault on a public servant if he intentionally or knowingly threatens a person that the actor knows to be a public servant with imminent bodily injury while the public servant is lawfully discharging an official duty and employs a deadly weapon in the assault. *See* Tex. Penal Code Ann. §§ 22.01(a)(2), 22.02(b)(2)(B).

### 2. The Law of Parties

Under the law of parties, "[a] person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both." Tex. Penal Code Ann. § 7.01(a) (Vernon 2003); *Frank v. State*, 183 S.W.3d 63, 72 (Tex. App.—Fort Worth 2005, pet. ref'd). A person is "criminally responsible" for an offense committed by the conduct of another if, "acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." Tex. Penal Code Ann. § 7.02(a)(2) (Vernon 2003); *Frank*, 183 S.W.3d at 72. In determining whether a defendant participated in an offense as a party, the factfinder may examine the events occurring before, during, and after the commission of the offense and may rely on actions of the defendant that show an

7

understanding and common design to commit the offense. *Ransom v. State*, 920 S.W.2d 288, 302 (Tex. Crim. App. 1996) (op. on reh'g).

## C. Analysis

Reviewing all the evidence in a neutral light, we recall that no witnesses testified that Appellant knew a shank would be used during the assault. We also recall that Officer Thompson did not find any weapons when he searched Appellant before escorting the inmates to the gym, that the DNA analysis of one shank revealed contributors other than Appellant, that only Davila was seen with a shank, that Appellant introduced evidence that he may have been coerced into participating due to a threat against his family,[3] that Edwards devised the escape plan and was attempting to force others to participate, and that it is not common for Bloods and Crips to associate with one another in the manner that Davila and Appellant apparently did. However, the jury also heard evidence that Appellant and Edwards were planning the escape attempt before Davila was transferred to the jail; that Appellant referred to Davila as his "homeboy"; that Appellant appeared to multiple witnesses to be an uncoerced and willing participant in the assault and escape attempts; that Appellant's DNA was consistent with that found on one shank; that Appellant could not be excluded as a contributor of the DNA on the second shank; that Appellant's and Thompson's DNA were on Appellant's jumpsuit; that Appellant

---

[3] ... The State offered rebuttal evidence, however, that the alleged threat occurred after the August 20, 2008 escape attempt.

8

punched Peters; that Appellant hit, kicked, and stepped on Thompson; that Appellant had an injury to his hand near where he would have held a weapon; and that Appellant was holding the keys and trying to open the exit door when he and Edwards were apprehended.

Appellant cites *Wooden v. State* to support his contention that the evidence is factually insufficient to establish the aggravating element of his conviction for aggravated assault on a public servant. *See* 101 S.W.3d 542, 547–48 (Tex. App.—Fort Worth 2003, pet. ref'd). In *Wooden*, we held that the evidence was legally insufficient to support the aggravating element of aggravated robbery because "there [was] no evidence in the record that appellant knew the gun was in the car or that appellant aided or encouraged the other passenger to threaten [the complainant] with the gun." *Id.* at 548. However, in *Wooden*, there was no evidence that Wooden and his associates had previously planned the encounter with the complainant. *See id.* at 543–45. Instead, the complainant confronted Wooden and his associates after the complainant determined that the men were "up to no good." *Id.* at 543. Here, there is evidence that Appellant and Edwards had planned to escape for a period of time before the actual assault and that the shanks were made from the heating elements provided to the inmates to warm their food. Further, multiple witnesses testified that Appellant was an active participant in the planning,

the assault, and the escape attempt after the assault. The jury could have inferred that Appellant knew that the escape plan would include the use of the shanks.[4]

Viewing all the evidence in a neutral light, and considering the events occurring before, during, and after the assault, we conclude that a rational trier of fact could have found beyond a reasonable doubt that Appellant, acting with intent to promote or assist the commission of the offense, solicited, encouraged, directed, aided, or attempted to aid Davila and Edward to commit the offense of aggravated assault on a public servant. *See* Tex. Penal Code Ann. § 7.02(a)(2); *Frank*, 183 S.W.3d at 72. We cannot say that the evidence is so weak that the jury's determination is clearly wrong or manifestly unjust or that the conflicting evidence so greatly outweighs the evidence supporting the convictions that the jury's determination is manifestly unjust. *See Lancon v. State*, 253 S.W.3d 699, 704 (Tex. Crim. App. 2008); *Watson*, 204 S.W.3d at 414–15, 417. We therefore hold the evidence is factually sufficient to support the jury's verdict. We overrule Appellant's first issue.

## IV. Affirmative Deadly Weapon Finding

---

[4] *... Stephens v. State*, 717 S.W.2d 338 (Tex. Crim. App. 1986) is similarly distinguishable. There, the appellant was in his apartment when his associates entered the apartment escorting the complainant. *Id.* at 339. The appellant did not go with the men into the bedroom until some time later. *Id.* The court of criminal appeals held there was insufficient evidence of the aggravating element of aggravated rape because there was no evidence that the appellant was aware that anyone threatened the complainant with serious bodily injury or that the appellant was in the room where the complainant was raped while any such threat was made. *See id.* at 339–41.

Appellant argues in his second issue that the trial court erred by including an affirmative deadly weapon finding in the judgment because the jury did not make an express finding that Appellant either used or exhibited a deadly weapon or knew that a deadly weapon would be used or exhibited during the commission of the offense.

The indictment in this case charged Appellant with intentionally or knowingly causing bodily injury to Thompson and using or exhibiting "a deadly weapon during the commission of the assault, to-wit: a shank, that in the manner of its use or intended use was capable of causing death or serious bodily injury." The trial court instructed the jury that Appellant is guilty of aggravated assault on a public servant as alleged in the indictment if the jury found beyond a reasonable doubt that Appellant intentionally or knowingly caused bodily injury to Thompson by kicking him with his foot, by striking Thompson with his hand, or by cutting or stabbing Thompson and "use[d] or exhibit[ed] a deadly weapon during the commission of the assault, to-wit: a shank, that in the manner of its use or intended use was capable of causing death or serious bodily injury." The charge also instructed the jury that Appellant was guilty of aggravated assault on a public servant if the jury found beyond a reasonable doubt that Appellant, "acting with the intent to promote or assist in the commission of the offense of aggravated assault on a public servant, solicited, encouraged, directed, aided, or attempted to aid Erick Davila or James Edwards to commit the offense of aggravated assault on a public servant." Further,

11

the jury charge included the lesser included offense of assault on a public servant that did not include a deadly weapon element.

In *Bell v. State*, the appellant made an argument virtually identical to Appellant's. *See* 169 S.W.3d 384, 398–99 (Tex. App.—Fort Worth 2005, pet. ref'd). There, the appellant argued that "the trial court erred by including an affirmative finding of the use of a deadly weapon in its judgment." *Id.* at 398. He argued that the jury was required to make an express finding that he knew that a deadly weapon would be used or exhibited during the commission of the offense because the jury charge allowed the jury to convict him as a party. *Id.* at 399. Rejecting the argument, we noted that the indictment charged the appellant with using a deadly weapon and that the jury found the appellant guilty as charged in the indictment. *Id.* at 398. We also stated,

> To convict appellant of murder under the law of parties, the jury was required to find that appellant intended to promote or assist the commission of the offense. In other words, the jury was required to find that appellant intended to promote or assist Burdick in murdering Thompson with a deadly weapon, namely, appellant's car. Therefore, before the jury could convict appellant as a party, it had to find that he knew a deadly weapon would be used in the commission of the offense. The trial court did not err by including an affirmative finding of the use of a deadly weapon in its judgment.

*Id.* at 398–99 (internal citations omitted); *see Sarmiento v. State*, 93 S.W.3d 566, 570 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd) (op. on reh'g, en banc).

The court in *Sarmiento* held that when a defendant is convicted under the law of parties, a specific finding that the defendant used or exhibited a deadly weapon

12

or knew that a deadly weapon would be used or exhibited is not required when the use or exhibition of a deadly weapon is an element of the charged offense. *See* 93 S.W.3d at 569–70. The *Sarmiento* court stated:

> [W]here the use of a deadly weapon is an element of the offense, the State automatically carries the burden of proving the defendant knew a weapon would be used or exhibited in the commission of the offense. In other words, even as a party, a defendant cannot be convicted unless his participation is accompanied with the intent "to promote or assist the commission of the offense." The offense here was aggravated robbery, and the use of a deadly weapon was alleged in the indictment as an element of the offense. Thus, before jurors were authorized to find appellant guilty, even as a party, they first had to believe beyond a reasonable doubt that appellant knew a deadly weapon would be used in the commission of the offense. By its verdict, the jury necessarily made the factual finding to support the entry of an affirmative finding of the use or exhibition of a deadly weapon upon the judgment.

*Id.* at 570. (internal citations omitted); *see also Johnson v. State*, 6 S.W.3d 709, 714 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd) (same).

Appellant argues that because the jury charge did not repeat the language concerning the use or exhibition of a deadly weapon in the portion defining his criminal responsibility under the law of parties, "the record does not clearly show whether the conviction is grounded on direct or party liability."

As in *Bell* and *Sarmiento*, the jury here was required to find that Appellant intended to promote or assist the commission of the offense before it could find him guilty of aggravated assault on a public servant. *See Bell*, 169 S.W.3d at 398–99; *Sarmiento*, 93 S.W.3d at 569–70. The trial court instructed the jury in the definition

13

section of the charge that "[a]n assault is aggravated if the person intentionally or knowingly causes bodily injury to a person the actor knows is a public servant while the public servant is lawfully discharging an official duty *and the actor uses or exhibits a deadly weapon during the assault.*" [Emphasis added.] The trial court also instructed the jury that Appellant was guilty of aggravated assault on a public servant if the jury found beyond a reasonable doubt that Appellant, "*acting with the intent to promote or assist in the commission of the offense of aggravated assault on a public servant*, solicited, encouraged, directed, aided, or attempted to aid Erick Davila or James Edwards *to commit the offense of aggravated assault on a public servant.*" [Emphasis added.] Moreover, the jury charge included the lesser included offense of assault on a public servant, which did not include the aggravating deadly weapon element, but the jury did not convict Appellant of the lesser charge. We assume that the jury followed the trial court's instructions in the absence of evidence to the contrary. *See Williams v. State*, 937 S.W.2d 479, 490 (Tex. Crim. App. 1996). Because the jury had to believe beyond a reasonable doubt that Appellant used or exhibited a deadly weapon or knew a deadly weapon would be used or exhibited to assault Thompson before it could find Appellant guilty as charged in the indictment, a separate express deadly weapon finding by the jury was not required, and the trial court did not err by including an affirmative finding of the use of a deadly weapon in

14

its judgment. *See Bell*, 169 S.W.3d at 398–99; *Sarmiento*, 93 S.W.3d at 569–70; *Johnson*, 6 S.W.3d at 714. We overrule Appellant's second issue.[5]

## V. Reformation of Judgment

Appellant contends in his third issue that the judgment incorrectly lists a firearm as the deadly weapon used or exhibited during commission of the offense and that the judgment should be reformed to remove the reference to a firearm. The State concedes that the judgment incorrectly states that Appellant used or exhibited a firearm and requests that the judgment be reformed to substitute a "shank" for a firearm. We sustain Appellant's third issue, in part, and order that the trial court's judgment be modified to substitute a "shank" in place of the reference to a firearm. *See Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993); *see also Asberry v. State*, 813 S.W.2d 526, 529–31 (Tex. App.—Dallas 1991, pet. ref'd) (reforming judgment to include affirmative deadly weapon finding to correct trial court's clerical error in failing to include the finding in judgment).

---

[5] ... We are aware of our holding in *Barnes v. State* that the trial court erred by including an affirmative deadly weapon finding in the judgment in the absence of a special jury issue on the use of a deadly weapon. *See* 56 S.W.3d 221, 240 (Tex. App.—Fort Worth 2001, pet. ref'd). In *Barnes*, we stated that "when the jury is instructed on the law of parties, the jury must expressly state that appellant either used or exhibited a deadly weapon or knew that one would be used or exhibited during the commission of the offense." *Id.* (citing *Taylor v. State*, 7 S.W.3d 732, 740–41 (Tex. App.—Houston [14th Dist.] 1999, no pet.)). We note, however, that subsequent to our decision in *Barnes*, we issued our decision in *Bell*, and the Fourteenth Court of Appeals implicitly overruled *Taylor*. *See Bell*, 169 S.W.3d at 398–99; *see also Sarmiento*, 93 S.W.3d at 569–70 (expressly overruling three cases holding similarly to *Taylor*).

15

## VI.  Conclusion

Having overruled Appellant's first and second issues, and having sustained Appellant's third issue in part, we affirm the trial court's judgment as modified.


PER CURIAM


PANEL:  GARDNER, J.; LIVINGSTON, C.J.; and MEIER, J.

PUBLISH

DELIVERED:  August 19, 2010

16