**AFFIRMED; Opinion Filed March 6, 2014.**



**In The**

# Court of Appeals
# Fifth District of Texas at Dallas

**No. 05-12-01202-CR**

**JOHN WASHINGTON PAULEY, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 4**
**Dallas County, Texas**
**Trial Court Cause No. F10-40833-K**

# MEMORANDUM OPINION

Before Justices Moseley, Bridges, and Evans
Opinion by Justice Evans

John Washington Pauley appeals his conviction for the offense of aggravated robbery with a deadly weapon. In his first issue, appellant argues the evidence is legally insufficient to support his conviction. In his second and third issues, appellant complains the trial court erroneously admitted certain evidence obtained in violation of his *Miranda*[1] rights and his federal due process rights. For the reasons that follow, we affirm the trial court's judgment.

## BACKGROUND

Appellant and complainant, Angel Pinales, were co-workers at Fritz Industries. On February 6, 2010, shortly after 1 a.m., Pinales was working his shift in Building D at Fritz when a man, later identified as Quency Smith, hit him on the head with a gun while trying to steal

---

[1] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

money from him. It is undisputed that appellant was not the attacker. However, shortly before appellant clocked-out from his shift at Fritz at 10:30 p.m. on February 5, appellant saw Pinales, who was about to start his shift, in the break room with a large amount of cash. Less than three hours later at 1:11 a.m. on February 6, 2010, appellant's access card was used to enter the gate to Building D. A surveillance video taken around the same time shows a person going in the door of Building D and then returning and entering the passenger side of a vehicle that was just inside the gate. The vehicle immediately leaves.

Ten days after the incident, police detective Arthur Keele and his partner went to Fritz where they viewed the surveillance video and learned that appellant's access card was used to open the gate shortly before the attack. Keele asked to speak to appellant, who was working at the time. When appellant arrived at the office, Keele told appellant they were investigating the robbery and that "he had some explaining to do" because his access card was used to open the gate at the time of the incident. Keele testified that after appellant was advised of and waived his *Miranda* rights, he recounted to Keele the following events on the night of the attack.

Appellant told Keele that he had seen Pinales with a lot of money in the break room just before the shift change. After he got off work, appellant met up with "Scatter" and told him "he knew where a guy had some money." Appellant then got in Scatter's vehicle and they drove to Fritz where appellant used his access card to open the gate and drive into the lot. Scatter then got out of the car, ran inside, came running back, and they left. Appellant told Keele he did not know Scatter was going to take a gun to the robbery. Appellant also gave Keele a phone number for Scatter and the general location where he had met Scatter on the night of the incident.

Based on appellant's statements, Keele arrested appellant for aggravated robbery and transported him to the Mesquite Police Department. There, two other officers took appellant on a "down-and-out" so appellant could direct them to the location where he had met Scatter the

–2–

evening of the robbery. Appellant identified a block range on Michigan Avenue in Dallas but did not identify a specific residence. Keele's investigation of the telephone number appellant provided for Scatter revealed that it belonged to Quency Smith, who lived one block over from the area appellant identified on the down-and-out. Pinales identified Smith as his attacker from a photographic lineup eleven days after the incident.

Upon returning to the police station, appellant was placed in an interview room where Keele reminded him of the *Miranda* rights he received at Fritz earlier that day and placed the *Miranda* card appellant had previously signed at Fritz on the interview table. During the videotaped interview, appellant was uncooperative and repeatedly asked to phone his sister. According to Keele, at one point, appellant picked up the *Miranda* card from the table and ate a portion of it. The video recording depicts appellant grabbing a small document off the table in the interview room and eating a portion of it. The *Miranda* card that was introduced into evidence is missing the part containing a date and signature.

**ANALYSIS**

*A.* *Legal Sufficiency*

In his first point of error, appellant argues that the evidence is legally insufficient to support his conviction. In reviewing a legal sufficiency challenge, we must determine whether any reasonable fact finder could have found the essential elements of the offense beyond a reasonable doubt. *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012) (citing *Jackson v. Virginia*, 443 U.S. 307, 318 (1979)). We review all the evidence in the light most favorable to the verdict, giving deference to the fact finder's responsibility to weigh the evidence, resolve conflicting testimony, and draw reasonable inferences from basic facts to ultimate facts. *See id*. We also determine "whether the necessary inferences are reasonable based upon the combined and cumulative force of all of the evidence when viewed in the light most favorable to the

verdict." *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Direct and circumstantial evidence are treated equally. *Id*.

A person commits aggravated robbery if he, in the course of committing theft and with the intent to obtain or maintain control of property, intentionally, knowingly, or recklessly causes bodily injury to another and uses or exhibits a deadly weapon during the commission of the robbery. TEX. PENAL CODE ANN. §§ 29.02(a)(1), 29.03(a)(2) (West 2011). The indictment in this case tracked the language of the statute alleging appellant:

> . . . intentionally and knowingly, while in the course of committing theft of property and with intent to obtain or maintain in control of said property, caused bodily injury to another, ANGEL PINALES, by STRIKING COMPLAINANT WITH A FIREARM, and the defendant used and exhibited a deadly weapon, to wit: A FIREARM.

In addition, the jury was instructed as to the law of parties which imposes criminal responsibility on a person for offenses committed by a person's own conduct, by the conduct of another for which he is criminally responsible, or by both. TEX. PENAL CODE ANN. § 7.01(a) (West 2011). A person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of an offense, he solicits, encourages, directs, aids or attempts to aid the other person to commit the offense. TEX. PENAL CODE ANN. § 7.02(a)(2) (West 2011).

It is undisputed that Smith committed aggravated robbery against Pinales with a deadly weapon. The jury was thus authorized to convict appellant of aggravated robbery with a deadly weapon if it found beyond a reasonable doubt that appellant acted with intent to promote or assist Smith in the commission of the offense by encouraging, aiding, or attempting to aid him in the aggravated assault of Pinales with a deadly weapon. Evidence that a defendant was physically present at the commission of the offense and encouraged the commission of the offense either by words or agreement is legally sufficient to support his conviction as a party to the offense.

*Cordova v. State,* 698 S.W.2d 107, 111(Tex. Crim. App. 1985). While there must be sufficient evidence that appellant was criminally responsible for the aggravating element, evidence that appellant had direct knowledge of the aggravating element is not necessary. *See Hurd v. State*, 322 S.W.3d 787, 790 (Tex. App.—Fort Worth 2010, no pet.). The fact finder may examine events occurring before, during, and after the offense and may rely on the defendant's actions that show an understanding and common design to commit the offense. *See King v. State,* 29 S.W.3d 556, 564 (Tex. Crim. App. 2000).

Appellant argues that he cannot be liable as party for the offense because he did not know Smith was going to use a gun in the robbery. We disagree. The evidence shows that appellant met up with Smith after his shift ended, told him about the cash Pinales displayed in the break room, returned to Fritz with Smith, allowed his access card to be used to gain entry to the premises shortly before the attack occurred, and, after Smith came out of the building, the two fled. The video surveillance tape shows a person getting into the passenger side of a vehicle while it is driving away, suggesting that appellant was driving. Based on the evidence before it, the jury could have determined that appellant formulated and organized the plan to commit the offense against Pinales. Evidence that appellant was intimately involved with the planning and details of the offense against Pinales was sufficient for the jury to find beyond a reasonable doubt that appellant aided or encouraged the commission of the offense. *See King*, 29 S.W.3d at 564.

That appellant claims he did not know Smith was bringing a gun to the robbery does not render the evidence insufficient. Lack of evidence concerning appellant's direct knowledge of the gun is not dispositive and fact finders may make reasonable inferences from evidence presented at trial. *See Hooper v. State,* 214 S.W.3d 9, 14–15 (Tex. Crim. App. 2007) (circumstantial evidence as probative as direct evidence in establishing guilt). Moreover, the jury, as fact finder, was free to disbelieve appellant's self-serving statement. The evidence was

legally sufficient to support a finding that appellant was criminally responsible as a party for aggravated robbery with a deadly weapon. We resolve appellant's first issue against him.

## B.     *Admission of appellant's oral statements*

In his second issue, appellant contends the trial court erred in admitting evidence of the statements appellant made during the interview at Fritz. Specifically, appellant challenges the voluntariness of his confession at Fritz by arguing it was the product of custodial interrogation and he was not properly warned of his *Miranda* rights. In his third issue, appellant raises the same complaints regarding evidence of any statements he made on the down-and-out.

At the pre-trial hearing on appellant's motion to suppress, Keele, Officer Chad Copeland, and appellant testified. Keele testified that he went to Fritz to investigate the incident. After reviewing the videotape, access card transaction reports, and obtaining a statement from Pinales, he requested that appellant, who was working, be brought to the safety director's office so the officers could speak with him. When appellant entered the office, Keele was sitting in a chair behind the desk and appellant and Keele's partner sat in one of the two chairs on the other side of the desk. Keele explained to appellant that they "were investigating a robbery that occurred at Fritz Industries, and that he had a little bit of explaining to do because his name has come up in the investigation." According to Keele, he then read appellant his rights off a *Miranda* card. Keele dated and timed the card, which appellant then signed. Keele asked appellant if he understood his rights fully. Keele testified appellant was not physically detained in any way and if appellant got up to walk out, the officers would not have stopped him. Keele admitted, however, that he never told appellant he was free to leave and walk out at any time. Keele further stated he did not have probable cause to arrest appellant until after appellant admitted his participation in the attack.

When Keele asked appellant to explain why his access card was used to open the gate at the time the robbery occurred, appellant detailed his role in the robbery. Appellant also gave Keele Smith's phone number and told Keele that he did not know Smith was going to bring a gun to the robbery. After listening to appellant's statements, Keele arrested appellant and transported him to the Mesquite Police Department where he asked two other officers to take appellant on a down-and-out to identify the location where appellant had met up with Smith the night of the robbery.

Copeland testified that pursuant to Keele's request, he and another detective performed a down-and-out with appellant to locate where Smith was staying or living. Copeland did not *Mirandize* appellant or ask appellant any questions about the offense during the down-and-out. Copeland stated appellant directed them to an area on Michigan Avenue in Dallas where he met up with the accomplice.

Appellant testified he was working on a forklift when his name was called on the loudspeaker to report to the main office. Keele was sitting behind the desk and asked him to step into the office. Keele's partner was standing at the door. Keele asked appellant if he was at Fritz on February 5 and if he got paid. After appellant said yes, Keele told him to have a seat and asked appellant if he knew about the incident with Pinales. When appellant asked Keele "what incident," Keele replied, "Now you know he got assaulted." Appellant asked what that had to do with him and Keele then identified himself and his partner as police officers who were investigating the attack. According to appellant, when Keele asked him if he knew anything about the situation with Pinales, appellant said "No." Keele then told appellant they had records showing he came through the gate at the time of the incident and they knew appellant was on federal probation. Keele also told appellant that they had already talked to his probation officer. When appellant asked the officers if he was under arrest, Keele stated he was not. Appellant

–7–

then said he told the officers he did not want to speak to them, to which Keele responded, "So you think you can walk out of here?" According to appellant, Keele told him they thought it was a robbery and were going to take him to police headquarters for his part in the robbery. Appellant testified he denied any involvement in the robbery and after a hostile exchange, appellant was handcuffed and taken to the police station. Appellant denied he was advised of his *Miranda* rights or that he signed a *Miranda* card. He also denied eating a portion of the *Miranda* card on which his signature appeared. When shown the video of his police station interview depicting him eating part of a piece of paper, appellant claimed what he ate was gum.[2]

Immediately after the hearing, the trial judge made the following findings: (1) appellant was not in custody at the time he made the statements in the Fritz office, (2) appellant made those statements freely and voluntarily, and (3) the statements were not the product of any coercion. The findings of fact were dictated into the reporter's record. Before voir dire on the day of trial, the trial court made additional findings that appellant was given the *Miranda* warnings, that he waived his rights voluntarily, knowingly, and intentionally; and gave a free and voluntary statement that was not the product of coercion or trickery. The additional findings were also dictated into the reporter's record. The trial court then ruled that all of appellant's statements, including those from the down and out, were admissible.

Before addressing the merits of appellant's second and third issues, we first consider his contention that the recent case of *Vasquez v. State*, 411 S.W.3d 918 (Tex. Crim. App. 2013), mandates that we abate this appeal and remand the case to the trial court to make and file written findings of fact and conclusions of law with respect to the voluntariness of appellant's

---

[2] Appellant testified that during the down and out, the officers didn't speak to him and he didn't speak to them. He also denied giving them directions to the location they took him.

statements.[3]  Here, the trial court dictated its findings and conclusions into the record which appear in the reporter's record which was filed with the district clerk.  The court of criminal appeals has previously held that a trial court satisfies section 6 of article 38.22 when it dictates its findings and conclusions into the record and they are transcribed and made part of the reporter's record, filed with the district clerk, and made part of the appellate record.  *See Murphy v. State*, 112 S.W.3d 592, 601–02 (Tex. Crim. App. 2003).  We find no conflict between *Vasquez* and *Murphy*.  Accordingly, abatement for trial court findings is not required.

Turning to the merits, the Fifth Amendment right against self-incrimination is satisfied only when a defendant in custody gives his statements voluntarily.  *Miranda v. Arizona,* 384 U.S. 436, 444 (1966).  In order to ensure a statement is given voluntarily, police officers must supply the defendant in custody with their legal rights and warnings.  *Id*. at 467.  We review the trial judge's determinations as to custody and voluntariness under an abuse of discretion standard giving almost total deference to the trial judge's determination of historical facts and any mixed questions of law and fact that depend on witness credibility, while reviewing de novo pure questions of law and mixed questions that do not depend on credibility determinations.  *State v. Saenz,* 411 S.W.3d 488, 495–96 (Tex. Crim. App. 2013) (custody); *Neal v. State,* 256 S.W.3d 264, 281(Tex. Crim. App. 2008) (voluntariness).

A person is in custody only if, under all the objective circumstances, a reasonable person would believe his freedom of movement was restrained to the degree associated with an arrest. *Dowthitt v. State,* 931 S.W.2d 244, 254 (Tex. Crim. App. 1996).  In contrast, a person held for investigative detention is not in custody.  *Id*. at 255.  The determination of whether a person is in custody is made on an ad hoc basis and depends on the objective circumstances rather than the

---

[3] Appellant first brought *Vasquez* to our attention in a letter presenting additional authority filed the day before oral argument.  Both the State and appellant then filed post-submission briefs on this issue.

unexpressed subjective views of the questioning officer or person being questioned. *Id*. at 254–55. We determine the ultimate legal question of whether a person was in custody by considering the facts, as assessed for weight and credibility by the trial court, and making a legal determination as to whether those facts amounted to custody under the law. *Saenz*, 411 S.W.3d at 494.

There are at least four general situations when an investigative detention may evolve into custody: (1) the suspect is physically deprived of his freedom of action in any significant way; (2) a law enforcement officer tells the suspect he cannot leave; (3) law enforcement officers create a situation that would lead a reasonable person to believe his freedom of movement has been significantly restricted; or (4) law enforcement officers have probable cause to arrest a suspect, manifest that knowledge to the suspect, and do not tell the suspect that he is free to leave. *See State v. Ortiz*, 382 S.W.3d 367, 376 (Tex. Crim. App. 2012). The defendant bears the burden of proving that a statement was the product of custodial interrogation. *Herrara v. State*, 241 S.W.3d 520, 526 (Tex. Crim. App. 2007).

On appeal, appellant contends that an examination and objective consideration of all the circumstances shows that appellant was in custody because the police officers created a situation that would lead a reasonable person to believe that (1) his freedom of movement was significantly restricted, (2) there was probable cause to arrest, and (3) the officers did not inform appellant that he was free to leave. Appellant also asserts his testimony that he was not given his *Miranda* warnings coupled with the absence of any demonstrative evidence that the warnings were given, compel the conclusion that his alleged statements at Fritz and during the down-and-out were the product of illegal custodial interrogation.

In addition to the conflicting testimony regarding appellant's ability to leave the Fritz office before making his statements, there was also conflicting evidence on whether appellant

was given his *Miranda* warnings before he gave the statements. Giving due deference to its resolution of questions of historical fact that turn on credibility and demeanor, the trial court was free to disbelieve appellant's testimony that Keele would not let him leave the office and he was never given his *Miranda* rights in favor of Keele's contrary testimony that he read appellant the *Miranda* warnings from a card, appellant signed the card, appellant indicated he understood and waived his rights, and voluntarily detailed his involvement in the offense, and then later ate the part of the *Miranda* card containing his signature which was captured on video.[4]

Appellant also argues his federal due process rights were violated and his statements were involuntary because they were the result of "coercive tactics." We have not found, and appellant does not direct us to, where he raised this issue in the trial court. Appellant also makes no attempt in his appellate brief to specify the alleged coercive conduct of which he complains or analyze how this conduct violated his dues process rights with respect to the statements at issue. Accordingly, appellant has not preserved this issue for review. *See* TEX. R. APP. P. 33.1(a); 38.1(i). In any event, our review of the record supports the trial court's finding that neither appellant's statements at Fritz nor those during the down and out were the product of coercion. Accordingly, the trial court did not abuse its discretion in admitting evidence of appellant's statements at Fritz or during the down-and-out. We resolve appellant's second and third issues against him.

---

[4] It is undisputed that appellant was in custody at the time of the down-and-out. Copeland testified that he did not *Mirandize* appellant before the down-and-out. However, the record reflects that appellant was arrested after waiving his *Miranda* rights and giving his statement at the Fritz office and immediately taken to the police station for the down and out. Thus, the down and out was merely a continuation of the Fritz interview and new *Miranda* warnings were not necessary. *See Franks v. State*, 712 S.W.2d 858, 860–61 (Tex. App.—Houston [1st Dist.], pet. ref'd). Moreover, appellant does not argue the officers were required to *re-Mirandize* him before the down-and-out.

Having concluded all of appellant's issues lack merit, we affirm the trial court's judgment.

Do Not Publish
TEX R. APP. P. 47
121202F.U05

/David Evans/

DAVID EVANS
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

JOHN WASHINGTON PAULEY,
Appellant

No. 05-12-01202-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court
No. 4, Dallas County, Texas
Trial Court Cause No. F10-40833-K.
Opinion delivered by Justice Evans,
Justices Moseley and Bridges participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 6th day of March, 2014.

/David Evans
DAVID EVANS
JUSTICE