

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-13-00071-CR

JEREMY DESHON HOPKINS        APPELLANT

V.

THE STATE OF TEXAS        STATE

----------

### FROM THE 396TH DISTRICT COURT OF TARRANT COUNTY
### TRIAL COURT NO. 1247597D

----------

## MEMORANDUM OPINION[1]

----------

Appellant Jeremy Deshon Hopkins was charged with intentionally causing the death of Azmi Elqutob by shooting him with a firearm during the commission of a robbery. A jury acquitted Hopkins of capital murder but found him guilty of aggravated robbery with a deadly weapon under the law of parties based on evidence showing that Frederick Jones was the shooter, and it assessed

---

[1]*See* Tex. R. App. P. 47.4.

Hopkins's punishment at eighty-nine years' confinement. In two issues, Hopkins appeals his conviction for aggravated robbery with a deadly weapon.

In his first issue, Hopkins argues that the evidence is insufficient to sustain his conviction as a party, complaining that no evidence showed that he solicited, encouraged, or directed Jones to commit the robbery and that there is only scant evidence, lacking in credibility, to show that he aided or attempted to aid Jones in the commission of the robbery.

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Blackman v. State*, 350 S.W.3d 588, 595 (Tex. Crim. App. 2011).

The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Winfrey*, 393 S.W.3d at 768. Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex.

2

Crim. App. 2010). Instead, we determine whether the necessary inferences are reasonable based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict. *Sorrells v. State*, 343 S.W.3d 152, 155 (Tex. Crim. App. 2011); *see Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Temple*, 390 S.W.3d at 360.

Here, the State had to prove beyond a reasonable doubt that Hopkins, either personally or as a party, caused Elqutob's death or bodily injury during the course of a robbery in which a deadly weapon was used.[2] *See* Tex. Penal Code Ann. §§ 7.02(a)(2), 29.02(a)(1), (2) (West 2011). To establish Hopkins's liability as a party, the State had to prove that Hopkins had the specific intent to promote or assist in the commission of the aggravated robbery. *See id.* § 7.02(a)(2) ("A person is criminally responsible for the offense committed by the conduct of another if acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense."); *see also id.* § 6.03(a) (West 2011) ("A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the

---

[2]Hopkins does not challenge the sufficiency of the evidence to prove that Elqutob was shot and killed with a deadly weapon during the course of the robbery.

conduct or cause the result."); *Wooden v. State*, 101 S.W.3d 542, 547 n.1 (Tex. App.—Fort Worth 2003, pet. ref'd) (noting that to be guilty as a party to aggravated robbery, a defendant must intend to promote or assist an aggravated robbery—not just a theft—and solicit, encourage, direct, aid, or attempt to aid another person in committing aggravated robbery).

An individual's mere presence at the crime scene is not sufficient to prove party liability. *Scott v. State*, 946 S.W.2d 166, 168 (Tex. App.—Austin 1997, pet. ref'd). However, if the accused is physically present at the time of the offense and encourages the other party by acts, words, or other agreement, the evidence is sufficient to support party liability. *Barnes v. State*, 56 S.W.3d 221, 238 (Tex. App.—Fort Worth 2001, pet. ref'd), *abrogated on other grounds by Hurd v. State*, 322 S.W.3d 787, 793 n.5 (Tex. App.—Fort Worth 2010, no pet.); *see also Wooden*, 101 S.W.3d at 547 n.1. Therefore, we review the evidence to determine whether the State proved that Hopkins did more than stand outside of Smokey's Paradise, the convenience store where Jones shot Elqutob.

Fort Worth Police Detective Thomas Boetcher testified that on June 1, 2011, he began investigating the Smokey's Paradise homicide. He was unable to locate the gun or any of the shooter's clothing, fingerprints, or DNA. A few days later, Detective Boetcher discovered that Jones was the shooter and an unidentified caller reported Hopkins's involvement to the police. Following this call, Devin Jennings contacted Detective Boetcher and implicated Hopkins in the robbery.

In an effort to aid in the investigation, Elqutob's family offered a $5,000 reward for any information related to the shooting. After the family posted the reward, Lorenzo Kelly[3] contacted Detective Boetcher with information regarding the shooting and agreed to wear a recording device and meet Hopkins and Jones.[4]

The State published Kelly's recorded conversation with Hopkins and Jones to the jury. In the conversation, Hopkins told Kelly that he (1) got the gun for Jones, (2) wiped all of the fingerprints off the bullets before giving the gun to Jones, and (3) disposed of the gun in the Trinity River after the shooting. He also told Kelly that Jones was a fool for shooting Elqutob.[5] Detective Boetcher obtained an arrest warrant for Hopkins based on Kelly's recorded conversation with Hopkins.

---

[3]Kelly had a Tarrant County theft conviction and a prior Louisiana conviction for drug possession and distribution, for which he received probation. While on probation, he was convicted of another possession offense and sentenced to five years' confinement. At the time of the trial, Kelly was in custody, and officers had to drive to Louisiana to bring him to court.

[4]Kelly, who was from the same Louisiana town as Hopkins and Jones, testified that he knew Hopkins and Jones, that it had always been Jones and Hopkins's plan to rob the store clerk, and that Hopkins was involved in the robbery's planning from the beginning.

[5]On cross-examination, Kelly testified that he alone had control of when and how the recording was made and that he had a conversation with Jones about the shooting but that the recorder came out of his pocket and therefore did not record—leaving the State with only the Hopkins's conversation.

Detective Boetcher interviewed Hopkins at the police station, and the State published the recorded interview to the jury. During the interview, Hopkins admitted that (1) he got the gun for Jones, (2) he knew the gun was going to be used in a robbery, (3) he agreed to warn Jones if the police showed up, (4) he earned his portion of the money because he got Jones the gun and was the lookout, (5) he knew Jones was going to rob the store clerk and not Weedman[6] before the robbery occurred, and (6) if he had not gotten the gun for Jones, the robbery might not have occurred at all. Hopkins even corrected the detective regarding the gun, telling him it was a nine-millimeter and not a .40 caliber.[7]

Detective Boetcher agreed during cross-examination that Hopkins said that when he got the gun, he had no idea that Jones was going to rob the store clerk, that at no point during the interview did Hopkins say that he knew Jones was going to kill someone, and that Hopkins called Jones a "fool" for killing the store clerk.

Fort Worth Police Detective Troy Lawrence testified that on June 1, 2011, he went to Smokey's Paradise to retrieve a video from the store's surveillance cameras. He pieced together the cameras' footage so that it showed the

---

[6]Hopkins claimed that when he obtained the gun, he thought Jones was going to rob Weedman, a dope dealer who lived in the apartment complex next to Smokey's Paradise, but Weedman was not home so they decided to rob the store instead.

[7]Ballistics confirmed that the weapon was a nine-millimeter.

chronological order of the shooting. The State published the chronological video and the breakdown of each camera view individually to the jury.

The video showed the shooter, identified as Jones, wearing gloves and a bandanna over his face. He entered the store while firing a semi-automatic gun. Bullets immediately hit Elqutob, who was working behind the counter. Jones went behind the counter, removed the money from the register, and ran out of the store. Detective Lawrence agreed on cross-examination that the only actor on the video was Jones and that police only retrieved the store's surveillance video and did not attempt to collect any digital material from surrounding locations.

Hopkins argues that "[t]here was no evidence presented at trial that . . . [he] solicited, encouraged, or directed Frederick Jones to commit the robbery" and that "there was little evidence presented that . . . [he] aided or attempted to aid Jones in his commission of the robbery." According to Hopkins, "Detective Boetcher believed . . . [Hopkins] was part of the robbery and the planning of the robbery based on the cryptic language [Hopkins] used . . . [during the] interrogation." Hopkins further argues that Kelly's testimony lacked credibility and that his testimony about the recorded conversation was only Kelly's interpretation of the discussion.

Although there is some disagreement between the parties as to when Hopkins learned that Jones was going to rob the store, the record reflects that Hopkins knew that Jones was going to use the gun in a robbery. Furthermore,

7

there was evidence that Hopkins wiped all fingerprints off the gun and bullets before giving it to Jones and disposed of the gun after the robbery. Hopkins admitted in his interview with Detective Boetcher that he told Jones that while he would not go into the store with him, he would warn him if the police arrived, i.e, that he would be Jones's lookout. Hopkins also admitted to Detective Boetcher that he received money from the robbery because he got the gun and acted as Jones's lookout.

Additionally, the jury, as the trier of fact, was the sole judge of Kelly's credibility. Despite Kelly's extensive criminal record and the fact he was in jail at the time of his testimony, his credibility and the weight of his testimony were within the jury's province and it could believe all or none of his testimony. *See* Tex. Code Crim. Proc. Ann. art. 38.04; *Winfrey*, 393 S.W.3d at 768.

Although both the interview and the recorded conversations contain several slang terms, a jury could have understood the gist of the conversation. As such, a rational trier of fact could have found from the evidence presented that Hopkins acted with intent to promote or assist Jones in the aggravated robbery by aiding or attempting to aid Jones in committing the offense. Therefore, we hold that the evidence is sufficient to establish that Hopkins intentionally or knowingly aided and assisted Jones in committing the aggravated robbery of Elqutob. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Winfrey*, 393 S.W.3d at 768. We overrule Hopkins's first issue.

In his second issue, Hopkins complains that the trial court abused its discretion by admitting hearsay regarding Kelly's testimony about a conversation he overheard.

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion. Tex. R. App. P. 33.1(a)(1); *Landers v. State*, 402 S.W.3d 252, 254 (Tex. Crim. App. 2013); *Sample v. State*, 405 S.W.3d 295, 300 (Tex. App.—Fort Worth 2013, pet. ref'd). Further, the trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court's refusal to rule. Tex. R. App. P. 33.1(a)(2); *Pena v. State*, 353 S.W.3d 797, 807 (Tex. Crim. App. 2011). Furthermore, to preserve error, a party must continue to object each time the objectionable evidence is offered. *Geuder v. State*, 115 S.W.3d 11, 13 (Tex. Crim. App. 2003); *Martinez v. State*, 98 S.W.3d 189, 193 (Tex. Crim. App. 2003) (citing *Ethington v. State*, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991)); *Clay v. State*, 361 S.W.3d 762, 766 (Tex. App.—Fort Worth 2012, no pet.). A trial court's erroneous admission of evidence will not require reversal when other such evidence was received without objection, either before or after the complained-of ruling. *Estrada v. State*, 313 S.W.3d 274, 302 n.29 (Tex. Crim. App. 2010) (citing *Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998)), *cert. denied*, 131 S. Ct. 905 (2011*); Lane v. State*, 151 S.W.3d 188, 193 (Tex. Crim. App. 2004).

9

During the State's direct examination of Kelly, the prosecutor asked if there had been a plan to rob the store clerk prior to the actual robbery. Hopkins objected to hearsay. The trial court asked the prosecutor to clarify the question and said that it would overrule the objection if Kelly's answer was based on what he had heard from Hopkins. Hopkins made one further objection to hearsay, which the trial court overruled. The prosecutor then asked Kelly if the plan had been to rob the store all along, and Kelly answered yes without any objection from Hopkins. Later, the State again asked Kelly if the plan between Jones and Hopkins had always been to rob the store, and Kelly again answered yes without any objection from Hopkins. Because Hopkins did not object each time the State offered the objectionable evidence, he did not preserve this error for our review. *See* Tex. R. App. P. 33.1(a)(1); *Geuder*, 115 S.W.3d at 13. We overrule Hopkins's second issue.

Having overruled both of Hopkins's issues, we affirm the trial court's judgment.

PER CURIAM

PANEL: MCCOY, MEIER, and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: September 25, 2014

10